[CHANCERY. RES ADJUDICATA. LEX LOCI.]

## M'CORMICK and Wife and others, *Appellants,*

v.

## SULLIVANT and others, *Respondents.*

The Courts of the United States are Courts of *limited,* but not of *inferior* jurisdiction. If the jurisdiction be not alleged in the proceedings, their judgments and decrees may be reversed for that cause, on a writ of error and appeal ; but, until reversed, they are conclusive evidence between parties and privies.

The title and disposition of real property is governed by the *lex loci rei sitæ.*

The title to lands can only pass by devise, according to the laws of the State or country where the lands lie. The probate in one State, or country, is of no validity as affecting the title to lands in another.

APPEAL from the Circuit Court of Ohio.

The appellants filed their bill in equity in the Court below, setting forth, that William Craw-

ford, deceased, the father of the female appellants, being, in his lifetime, a colonel in the Virginia line, on continental establishment, and, as such, entitled to the quantity of 6,666 and 2-3d acres of land, to be laid off between the Scioto and Little Miami rivers, on the northwest side of the river Ohio, departed this life, having first duly made and published his last will and testament, bearing date the 16th of June, 1782, whereby he devised all his estate, not otherwise disposed of by said will, to be equally divided between his three children, John Crawford, and the female complainants, and their heirs for ever. That this will was proved and recorded in Westmoreland county, in the State of Pennsylvania, on the 10th of September in the same year. That a warrant for the above quantity of land was afterwards issued in the name of the said John Crawford, as heir at law of his father, under which the following entries were made: one for 800 acres, which was surveyed and patented to Lucas Sullivant, of which quantity 400 acres are claimed by Bernard Thompson; another for 955 2-3d acres, which was surveyed and patented to John Armat, but then claimed by William Winship; another for 956 acres, patented to some person unknown, but claimed by Samuel Finley; another for 955 acres, patented to some person unknown, but believed to be claimed and possessed by Lucas Sullivant.

The bill then proceeds to interrogate the above parties, who are made defendants, severally, as to their knowledge of the above will, and of the

title of the female complainants, and requires of them to set forth and describe the lands severally claimed by them, from whom they purchased, at what time, and for what price the same were purchased, and when the purchase money was paid. The prayer is for a conveyance, by each defendant, of two thirds of the land claimed by them respectively, and for possession.

The answer of the heirs of Winship states, that the land to which they claim title was purchased, for a valuable consideration, of Thomas Armat, by their father, to whom a conveyance was made in the year 1807. That a bill was filed by the present complainants, against the said Thomas Armat, in the District Court of Ohio, exercising the powers and jurisdiction of a Circuit Court, for the land now in controversy, to which the said Armat filed his answer, asserting himself to be a *bona fide* purchaser of the land, for a valuable consideration, and without notice, and that, the cause coming on to be heard, the bill was dismissed without costs, after which decree, the purchase was made of Armat by the defendant's father. They insist upon, and pray to be protected by the said decree.

Finley answers, and alleges himself to be a *bona fide* purchaser, for a valuable consideration, of 500 acres, part of the 956 acres mentioned in the bill, from one Beauchamp, who claimed as assignee of Dyal, who was assignee of John Crawford, for which he paid, and received a patent, before notice of the claim of the plaintiffs, or of the will of William Crawford.

The heirs of Thompson filed a plea in bar,

alleging, that the complainants, in the year 1804, filed their bill in the District Court of Ohio, exercising the powers and jurisdiction of a Circuit Court, against B. Thompson, their ancestor, under whom they claim, setting forth the same title, and, substantially, the same matters, as in their present bill, to which the said Thompson answered, and the complainants replied, and upon a hearing of the cause the bill was dismissed with costs, which decree is in full force, &c.

Sullivant filed a similar plea, and the bill was dismissed, as to him, by agreement.

A general replication was put in to the answers of Finley and Winship's heirs, and a special replication to the plea in bar, setting forth the record in the former suit, and alleging, that the proceedings in that suit were *coram non judice*, the record not showing that the complainants and defendant in that suit, were citizens of different States.

Upon the hearing, the bill was dismissed, and an appeal taken to this Court.

Mr. *Doddridge*, for the appellants, argued, that March 5th the former proceedings in the District Court of Ohio, pleaded in bar of the present suit, were absolutely null and void, the record not showing that the parties to that suit were citizens of different States and consequently, the suit was *coram non judice*. The Courts of the United States are all Courts of limited jurisdiction, and the presumption is, that a case is without their

jurisdiction until the contrary appears.[a] The jurisdiction must appear on the record, either as arising out of the character of the parties, or the nature of the controversy. If it arises from the character of the parties, as being citizens of different States, aliens, &c. the citizenship or alienage of the respective parties must be set forth.[b] He also contended, that the probate of the will of W. Crawford, in Westmoreland county, now a part of the State of Pennsylvania, but then claimed by Virginia, as being within its territorial limits, was sufficient to pass the title to the lands in question; but if this were not so, that the probate and record of the will was notice to all the world, and affected, in the view of a Court of equity, the consciences of the grantees, and all those claiming under them. He, however, concluded by asking, that in case the decree of the Court below should be affirmed, that it might be without prejudice.

Mr. *Scott*, contra, insisted, that the appellants had entirely failed in establishing any title to the lands in question, under the will of W. Crawford, they not having exhibited a probate either in the State of Virginia, or of Ohio, which then constituted a part of Virginia. By the law of Virginia, then in force, it was necessary that a will of lands should be duly proved, and admitted to

a. Turner v. Bank of North America, 4 *Dall.* 8.

b. Bingham v. Cabot, 3 *Dall.* 282. Mossman v. Higginson, 4 *Dall.* 12. Abercrombie v. Dupuis, 1 *Cranch's Rep.* 343. Wood v. Wagnon, 2 *Cranch's Rep.* 1.

record in the Court of the county where the testator had his residence at the time of his decease; or, if he had no place of residence in the State, then in the County Court of the county where the lands devised were situate; or, if the land was of a certain value, it might be proved in the General Court.ª The will of W. Crawford, whether executed in Virginia or elsewhere, could not have the effect to pass his real estate, situate in that State, unless made and proved in conformity with its laws. It belongs to the sovereign power of every State, to prescribe the rules by which real property within its territory shall be transferred. No Courts but those of Virginia, or Ohio, could have jurisdiction of this will, because the probate must depend upon the legality of the execution, and that again must depend upon the *lex loci.* The probate of a Court of competent jurisdiction is, by the local law, conclusive evidence of the due execution of a will of real as well as personal estate. But the Court of Westmoreland county could have no jurisdiction of the probate of this will, because that Court was not established under the authority of Virginia, and because the lands did not lie in that county, nor was the testator resident there. A mere contested claim to the territorial jurisdiction could never lay the foundation to establish the validity of this probate, which was, in fact, made in a foreign country. It is laid down, by the text writers on this subject, that " if a will be made in a foreign country, disposing of goods in Eng-

1825.

M'Cormick
v.
Sullivant.

ª *Virginia Rev. Code.* 1769. c. 3. p. 159

1825.

M'Cormick
v.
Sullivant.

land, it must be proved there."[a]  *A fortiori.* would it be required to be proved there, (if by the English law probate of a will of lands were conclusive,) where it related to real property.[b]  If this will could not pass the legal title to the lands in controversy, neither could the respondents be affected with constructive notice by the probate in Pennsylvania.  Had it been duly proved and recorded in the State where the lands are situate, it is so vaguely drawn as not to designate, with certainty, the particular lands in question. The claim of the appellants would, therefore, still be but a latent equity, and the purchaser from the heir would be protected.[c]  He also insisted, that the respondents were protected by the former decree in the District Court.  Although the Courts of the United States are Courts of limited jurisdiction, so that their judgments will be reversed on error, unless the jurisdiction appears upon the face of the record, yet they are not inferior Courts in a technical sense; and so long as their judgments remain unreversed, they are conclusive.  Their judgments may be reversed in an appellate Court for this cause; but they are not mere nullities.[d]

*March* 16th.    Mr. Justice WASHINGTON delivered the opinion of the Court, and, after stating the case, proceeded as follows :

a  *Toller's Exec.* 72.

b  *Robertson, Wills,* 50. See also 11 *Vin. Abr.* 58, 59. 1 *Vern.* 391. 1 *Ld. Raym.* 251. 3 *Mass. Rep.* 518. 16 *Mass. Rep.* 441. Kerr v. Moon, 9 *Wheat. Rep.* 565. 570.

c  Lewis v. Madison, 1 *Munf.* 303.

d  Kempe v. Kennedy, 5 *Cranch's Rep.* 172.

The question which the plea of Thompson's heirs, and the answer of Winship's heirs, presents, is, whether the general decree of dismission of the bill in equity, filed by the present plaintiffs in the Federal District Court of Ohio, against the ancestor of these defendants, under whom they respectively claim title, is a bar of the remedy which is sought to be enforced by the present suit? The reason assigned by the replication, why that decree cannot operate as a bar, is, that the proceedings in that suit do not show that the parties to it, plaintiffs and defendants, were citizens of different States, and that, consequently, the suit was *coram non judice*, and the decree void.

But this reason proceeds upon an incorrect view of the character and jurisdiction of the inferior Courts of the United States. They are all of limited jurisdiction; but they are not, on that account, inferior Courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error, or appeal, be reversed for that cause. But they are not absolute nullities. This opinion was strongly intimated, if not decided, by this Court, in the case of *Kempe's lessee v. Kennedy*, (5 *Cranch's Rep.* 185.) and was, afterwards, confirmed by the decision made in the case of *Skillern's executors v. May's executors*, (6 *Cranch's Rep.* 267.) That suit came before this Court upon a writ of error, where the decree

1825.

M'Cormick
v.
Sullivant.

How far the Courts of the United States are Courts of limited jurisdiction. A judgment of those Courts may be reversed for want of jurisdiction appearing on the face of the proceedings; but, until so reversed, is conclusive as a *res adjudicata*.

1825.

M'Cormick
v.
Sullivant.

of the Court below was reversed, and the cause remanded for further proceedings to be had therein. After this, it was discovered by that Court, that the jurisdiction was not stated in the proceedings, and the question was made, whether that Court could dismiss the suit for that reason? This point, on which the Judges were divided, was certified to the Supreme Court, where it was decided, that the merits of the cause having been finally decided in this Court, and its mandate only requiring the execution of its decree, the Court below was bound to carry that decree into execution, notwithstanding the jurisdiction of that Court was not alleged in the pleadings. Now, it is very clear, that, if the decree had been considered as a nullity, on the ground that jurisdiction was not stated in the proceedings, this Court could not have required it to be executed by the inferior Court.

We are, therefore, of opinion, that the decree of dismission relied upon in this case, whilst it remains unreversed, is a valid bar of the present suit as to the above defendants.

The next question is presented by the answer of Finley. At the death of William Crawford, in the year 1782, he was entitled to a certain quantity of land to be laid off between the rivers Scioto and Little Miami, under a promise contained in an act of the legislature of Virginia. His interest in this land was purely an equitable one. After his death, a warrant to survey the same was granted to John Crawford, his only son and heir at law, who assigned to one Dyal a certain

tract which had been surveyed under the warrant, and the defendant claims a part of the tract so surveyed, under Beauchamp, who purchased from Dyal. He alleges, in his answer, that he made the purchase *bona fide*, paid the purchase money, and obtained a grant for the land, before he had notice of the will of William Crawford, or of the claim of his daughters under it.

Crawford's will, under which the female complainants claim title, was proved in some Court in the county of Westmoreland, in the State of Pennsylvania, and was there admitted to record ; but it does not appear, nor is it even alleged, to have been at any time proved in the State of Virginia, or in the State of Ohio, where the lands in controversy lie.

At the time of the death of William Crawford lands lying in Virginia were transmissible by last will and testament, in writing, the same being signed by the testator, or by some person in his presence, and by his direction, and if not wholly written by himself, being attested by two or more credible witnesses, in his presence. But to give validity and effect to such will, it was necessary that it should be duly proved, and admitted to record, in the Court of the county where the testator had his residence at the time of his decease, or, if he had no place of residence in that State, then in the Court of the county where the land devised lay, or it might be proved in the General Court, where the land was of a certain value. Subsequent to the death of William Crawford, an act of assembly was passed, which per

1825.

M'Cormick
v.
Sullivant.

mitted authenticated copies of wills, proved in any other State of the Union, or abroad, to be offered for probate in the General Court, or in the Circuit, County, or Corporation Court, where the whole of the estate lies.

By the law of the State of Ohio, lands lying in that State may be devised by last will and testament, or writing; but, before such will can be considered as valid in law, it must be presented to the Court of Common Pleas of the county where the land lies for probate, and be proved by at least two of the subscribing witnesses. If the will be proved, and recorded, in another State, according to the laws of that State, an authenticated copy of the will may be offered for probate in the Court of the county where the land lies, without proof by the witnesses; but it is liable to be contested by the heir at law, as the original might have been.

*Probate of a will of lands in one State, does not affect the title to real property in another. The lex loci rei sitæ, governs as to the disposition of real property.*

It is an acknowledged principle of law, that the title and disposition of real property is exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one person to another. For the establishment of this doctrine, it will be sufficient to cite the cases of the *United States* v. *Crosby,* (7 *Cranch's Rep.* 115.) and *Kerr* v. *Moon,* (9 *Wheat. Rep.* 565.) It follows, therefore, that no estate could pass to the daughters of William Crawford, under his will, until the same should be duly proved according to the laws of Virginia, where the land to which he was entitled lay, at the time of his death, or

of the territory of Ohio, after the cession by
Virginia to the United States, under the ordinance of Congress of the 13th of July, 1787, or
according to the law of that State, which has
already been recited.   The probate of the will
in the State of Pennsylvania, gave it no validity
whatever in respect to these lands, as to which
this Court is bound to consider Crawford as having died intestate, and, consequently, that they
descended to John Crawford, his only son and
heir at law, according to the law of Virginia, as
it stood in the year 1782.   The Court below,
then, could do no less than dismiss the bill as
against this defendant, upon the ground, that the
complainants had shown no title whatever, legal
or equitable, to the land in controversy.

This Court might be induced to yield to the
application of the counsel for the appellants, that
in case of an affirmance, it should be without
prejudice, if we could perceive, from the record,
that the complainants could, in another suit, present their case under a more favourable aspect.
But this the answer of Finley will not permit us
to anticipate ; for, even if an authenticated copy
of Crawford's will should hereafter be offered
for probate, and admitted to record in the State
of Ohio, still, the title to be derived under it
could not be permitted to overreach the legal title
of this defendant, founded, as it is, upon an equitable title, acquired *bona fide*, and for a valuable
consideration paid, which purchase, payment,
and acquisition of legal title, were made before
he had either legal or constructive notice of the

will, or of the claim of the daughters, for we are all of opinion, that the probate of the will in Pennsylvania cannot be considered as constructive notice to any person, of the devise of the lands in controversy. The decree of the Court below must, therefore, be affirmed generally, with costs.