Ranney, J.,
delivered the opinion of the court.
The lessors of the plaintiff are the heirs at law of Jeremiah Sheldon, who died seized of the lands in controversy, and their title is conceded to be perfect, unless it has been divested by a sale made by his administrators, under which the defendant claims title. By the agreed statement of facts, it appears that the widow, Olive Sheldon and Israel Sheldon, a brother of the decedent, were duly appointed and qualified to administer upon his estate; and at the April term of the court of common pleas for Washington county, for the year 1829, presented their petition for leave to sell lands to pay the debts of the estate. It particularly describes all the lands of which the intestate died seized, alleges a deficiency, of personal assets to the amount of $363.16, exclusive of expenses, and prays that the dower estate of the widow may be set off, that they may be appraised, and that leave may be given to sell two of the tracts not embracing the lands now in dispute. To this petition the children of Jeremiah Sheldon, the present lessors of the plaintiff, were made parties defendant. They were then infants, the eldest being but five years of age. No service of process was made upon either of them, but the court appointed their great uncle, Philip Cole, their guardian ad litem,, and ordered that a citation issue to him, returnable at the next term, to show cause, if any he had, on behalf of the minors, why the prayer of the petition should not be granted. At the same time freeholders were appointed, who assigned the widow’s dower, and made an appraisement of all .the lands described in the petition. At the next term, the sheriff returned the citatation duly served on the guardian ad litem, and the freeholders returned the assignment of dower and ^appraise-. [497 ment; and thereupon the court proceeded to order the administrators to make sale of the two parcels of land as prayed in the petition, and to make return thereof at the next term. No proceedings appear to have been had under this order; and at the October term, 1829, a further order was made that the administrators “-sell all, or *498 as much of the lands in the petition described, which have been appraised, and the appraisement returned to this court at a former term, as will pay all the just debts of said decedent’s estate.” Under this last order, the administrators, at the April term, 1830, returned a sale of the lands in dispute to Andrew McConnell, for the sum of $567.50, which being examined by the court, and found correct, was confirmed, and a deed ordered upon payment of the purchase money. It further appears that on the 15th day of September, 1829, and while the petition was pending, the administrator and administratrix intermarried, and it is agreed that McConnell, the nominal purchaser, was at the time an infant, paid no part of the purchase money, but bought the land and received the conveyance for the mere purpose of transmitting the title to Israel Sheldon, the administrator ; and on the same day he received the deed from the administrators (August 23, 1830), and while yet an infant, made a conveyance to him. On the 3d of December, 1833, Israel Sheldon conveyed to Wm. Fleming; and the latter, on the 15th of January, 1834, conveyed to the present defendant, who is not shown to have had any notice of the infancy of McConnell, or the circumstances attending the sale and conveyance to him. A short time before the commencement of this suit, and more than twenty years after' his first deed, McConnell made a deed for the premises to the lessors of the plaintiff.
Upon this state of facts, the plaintiff’s counsel insist that the court of common pleas, in the exercise of the powers invoked in this and similar cases, is not to be treated as a court of general common-law and chancery jurisdiction, but as a court of special and limited authority conferred by statute; and that all the é98] conditions and limitations prescribed *by law as essential to the exercise of its powers, must appear affirmatively from the record of its proceedings, without the aid of presumption or intendment, to have been complied with and regarded, or they may be collaterally impeached and treated as a nullity. That the record relied upon by the defendant fails to show the existence of many facts indispensable to the jurisdiction of the court; the petition did not ask for authority to sell the lands now in controversy, and there was, therefore, in respect to them, in effect, no petition ; the heirs were never made parties by being brought into court, and an opportunity given them to defend their rights; no deficiency of the personal assets appears to have been judicially *499 ascertained, and, therefore, no necessity for the sale of real estate was shown, and that, in proceeding to order a sale without the existence of these essential prerequisites to its authority, as well as in delegating to the personal representatives, the discretion to determine what lands should be sold, and in allowing more to be sold than was necessary to meet the alleged deficiency of the personal estate, the court exceeded its jurisdiction, and its order was wholly inoperative to transfer or affect the title to the premises now in dispute.
But if these proceedings can not be impeached, it is still claimed, that as McConnell was an infant when h'e conveyed to Israel Sheldon, his second deed, made since arriving at full age, must be held a disaffirmance of the first, and that in this manner, if in no other, the lessors of the plaintiff are invested with the legal title.
I. A settled axiom of the law furnishes the governing principles by which these proceedings are to be tested. If the court had jurisdiction of the subject-matter and the parties, it is altogether immaterial how grossly irregular, or manifestly erroneous its proceedings may have been ; its final order can not be regarded as a nullity, and can not, therefore, be collaterally impeached. On the other hand, if it proceeded without jurisdiction, it is equally unimportant how technically correct, and precisely certain, in point of *form, its record may appear; its judgment is void to [499 every intent, and for every purpose, and must be so declared by every court in which it is presented. In the one case, the court is invested with the power to determine the rights of the parties, and no irregularity or error in the execution of the power, can prevent its judgment, while it stands unreversed, from disposing of such rights as fall within the legitimate scope of its adjudication ; while in the other, its authority is wholly usurped, and its judgments and orders the exercise of arbitrary power under the forms, but without the sanction, of law. The power to hear and determine a cause is jurisdiction ; and it is coram judice whenever a case is presented which brings this power into action. But before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has actually been preferred; and that such person or thing has been properly brought before the tribunal, to answer the charge therein contained. 'When these appear, the jurisdiction *500 has attached; the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred; and whether determined rightfully or wrongfully, correctly or erroneously, is alike immaterial to the validity, force, and effect of the final judgment, when brought collaterally in question. United States v. Arredondo, 6 Pet. 709; Rhode Island v. Massachusetts, 12 Pet. 718.
We wholly dissent from the position taken in argument, that the jurisdiction of the court, or the effect of its final order, can be made to depend upon the records disclosing such a state of facts to have been shown in evidence, as to warrant the exercise of its authority. To adopt the language of the court, in answer to the same position, in Voorhes v. The United States Bank, 10 Pet. 473: “ We can not hesitate in giving a distinct and unqualified negative to this proposition, both on principle and authority too well and long settled to 500] be questioned.” *It was distinctly repudiated in the early case of Ludlow’s Heirs v. Johnston, 3 Ohio, 560; and has been no less positively denied in every subsequent case, including Adams v. Jeffries, 12 Ohio, 253. The tribunal in which these proceedings were had, was a court of record, of general common-law and chancery jurisdiction; and while it is true, that in the exercise of this particular authority, it may be regarded as a tribunal of special and limited powers prescribed by statute, it is still to be remembered, that it was the tribunal'croated by the constitution, with exclusive jurisdiction over probate and testamentary matters, and had no one single characteristic of those inferior courts and commissions, to which the rule insisted upon has been applied by the English and American courts. All its proceedings are recorded, and constitute records, in the highest sense of the term, inrqoorting absolute verity, not to be impugned by averment or proof to the contrary, and conclusively binding the parties, and all who stand in privity with them. The distinction is not between courts of general and those of limited jurisdiction, but between courts of record, that are so constituted as to be competent to decide on their own jurisdiction, and to exercise it to a final judgment without setting forth the facts and evidence on which it is rendered, and whose records, when made, import absolute verity; and those of an inferior grade, whose decisions are not of themselves evidence, and whose judgments can be looked through for the facts and evidence which are necessary to sustain them. McCormick v. Sullivant, 10 Wheat. 199; *501 Griswold v. Sedwick, 1 Wend. 131; Baldwin v. Hale, 17 Johns, 272; Grignous’ Lessee v. Astor, 2 How. 341; 2 Binn. 255 ; 4 Ib. 187.
Orphans’ courts, and courts of probate, when constituted courts of record, have uniformly been held of the former description. Thompson v. Tolmie, 2 Pet. 165 ; Grignous’ Lessee v. Astor, supra, 11 Serg. & Rawle, 429 ; 11 Mass. 227. In respect to them, when it appears that they have proceeded with jurisdiction over the subject-matter and the parties, we fully agree with the Supreme Court of Pennsylvania *in saying: “ If the purchaser was responsible [501 for their mistakes in point of fact, after they had adjudicated upon the facts, and acted upon them, those sales would be snares for honest menand with the Supreme Court of the United States, in affirming that the reasons upon which their decisions have rested, “ Are founded on the oldest and most sacred principles of the common law. They are rules of property, on which the repose of the country depends; titles acquired under the proceedings of courts of competent jurisdiction must bo deemed inviolable in collateral actions, or none can know what is his own; and there are no judicial sales around which greater security ought to be placed, than those made of the estates of decedents, by order of those courts to whom the laws of the states confide full jurisdiction over the subjects.”
The purchaser is bound to look no further back than the order of the court made in a proceeding which the law has empowered it to entertain, and with the proper parties, or subject-matter before it.
All else we are bound to presume in favor of its action; and neither in judgment of law, nor in fact, is it to be treated with the least distrust. The proper application of this principle disposes of all the exceptions taken to-these proceedings, arising after the jurisdiction of the court should have attached. The petition distinctly alleged a deficiency of personal assets, and described the lands now in controversy as a part of the estate of the decedent. The court had full power over the whole, and its right and duty to order the sale of so much, and such part, as might be necessary to meet the deficiency was unquestionable, whether it was the part indicated by the administrators or not. Ve are bound to presume the court had good reasons for going beyond the lots indicated by them; but if we were put to discover the reason, it would be' found in the fact that the appraised value of those lots amounted to but little, if any, *502, 503 more than one-half the represented deficiency. The final order presupposes the existence of debts, and the want of personal prOp-502] erty *to pay them, to have been shown to the satisfaction of the court; while the irregularity, if such it was, of not designating the particular tract to be sold, becomes wholly immaterial when it is remembered that no title passed by the sale alone, nor until the sale of the specific tract was judicially approved and a deed ordered.
As it is not denied that the court was invested with power to entertain the proceeding, and as the lands wore situated within the limits of its jurisdiction, it only remains to consider whether notice to the heirs was indispensable to the jurisdiction of the court; and if so, whether such notice was substantially given. These questions can only be answered in the light of a proper construction of the act of February 11, 1824 (2 Chase’s Stat. 1308), under which these proceedings were had. From a very early period in our history lands have been made assets, in the hands of executors and administrators, for the payment of debts; but at no time could they be converted into money for this purpose until the personal property was exhausted, nor without the special leave of the proper court of probate. Prior to the passage of the act of 1824, this leave was obtained upon the petition of the personal representatives showing a deficiency of personal assets. No parties defendant were required to be made, and the proceeding throughout was wholly ex parte, and strictly and technically in rem. That act effected no further change than to require “ the person having the next estate of inheritance of the testator or intestate ” to be made defendant to the petition. What effect did this have upon the proceeding? Did it make it an adversary proceeding in personam, in such sense as to make actual notice to the heir indispensable to the jurisdiction of the court? These questions have not been answered in any of the cases that have been decided, and they are not of easy solution.
As the interests of the owner of the property sought to be appropriated are involved in either form of pi’oceeding, neither is supposed to be pursued without notice to him. Proceedings in rem 503] have their own essential and distinguishing ^characteristics. They are usually brought to enforce some liability which the thing itself has incurred — the law treating the thing itself as the debtor or delinquent — or some specific lien' upon it. The seizure of the thing, and taking it from the possession of the owner and into the *504 custody of the law, is deemed to be implied notice to him, and while the proceedings were confined to the pursuit of personal property,, was often quite as effectual as actual notice by the service of a summons would have heen. Other means for giving notice were usually j)rescribed, but a failure to comply with them only goes to the regularity of the proceeding, and has never been held necessary to give-the court jurisdiction.
When the property charged with the liability is taken into the costody of the law, and brought within the power of the tribunal, and the judgment spends its whole force upon the property — creating no personal liability upon the owner — it has never been doubted that a judgment of condemnation was effectual to vest a. perfect title in the purchaser, however irregularly or erroneously the court may have proceeded.
But when the liability is not upon the thing, and it is seized-only to secure and satisfy such judgment as may be recovered, against the owner, there is much difficulty in seeing how the proceeding can be said to be in rem, or how a judgment in personam can be rendered until the party has been personally brought into-court by such notice as the law may have provided. I do not doubt that the validity of judgments strictly in rem, may, by positive provision of law, be made to depend upon the service of process or other notice upon the owner; but in the absence of such expressed legislative intention, the omission to serve the process, or give the notice, makes the proceeding only erroneous, but not. void. The thing itself being in the custody of the law, and within the power of the court, is subject to its action, and effectually disposed of by its judgment. The proceeding authorized by the act of 1824, tested by its nature and essential qualities, would seem to-be clearly enough a proceeding *in rem. Upon the death of [504 the owner, the law charged his debts as a specific lien on all his property, real and personal, and held it subject to their payment. The legal title to the real estate, it is true, descended to the heirr but it descended to him subject to his paramount lien. The executor or administrator was a trustee alike for creditors and heir, and the order of sale upon his petition, operated on the estate, and not on the heir: and the purchaser, by operation of law, took the-paramount title of the ancestor, and did not claim through or under the heir. 2 How. 338; 11 Serg. & Rawle, 430. The heir was required to be made a party to the proceeding, with a view to his- *505 having notice; but it is nowhere intimated that a failure to give the notice, should deprive the court óf jurisdiction over the property. I am, therefore, strongly inclined to the opinion, that such an omission goes only to the regularity of the proceeding, and not to the jurisdiction of the court; and that its final order can only be set aside for irregularity, or reversed on error, and can not be treated as a nullity in a collateral action. The proceeding was distinctly declared to be in rem, in the case of Robb v. Irwin’s Lessee, 15 Ohio, 698; and, although Eead, L, in his dissenting opinion, characterizes it as a “nickname,” in the case of Paine’s Lessee v. Mooreland, 15 Ohio, 435, decided at the same term, he not only concurred with the court, but delivered their opinion in holding proceedings in attachment to be in rem, in which jurisdiction was acquired by the seizure of property; and that a j udgment rendered without notice, could not be treated as a nullity, although such proceedings are founded upon no liability, or lien, resting upon the property itself, have adversary parties, and are consummated by a judgment in personam, and the statute expressly declaring that the suit shall be dismissed, at the cost of the plaintiff, if the notice is not given.
Butit docs not become necessary to place this case upon that ground, as the court are of the opinion that notice was given, in such manner 505] as substantially complied with the *law. This, we think, has been, in effect, settled for more than twenty years, by the court of last resort in the state. The statute provided for no particular foiun of process or mode of giving notice to the defendants. The necessity of giving any notice is only to be inferred from the fact that the heirs are required to be made defendants. This omission in the law had to be supplied by a course of practice in the several ■courts invested with the jurisdiction, and it is in no way surprising that entire uniformity was not secured. This fact demonstrates the propriety, and, indeed, the necessity, of upholding any form, ■of notice that afforded a reasonable opportunity to the heirs to interpose their objections to the sale. In the case of minor heirs, the practice was general to serve the process upon the general guardian, or a guardian ad litem, or to permit an appearance without process by either. The correctness of this practice was first drawn in question in Ewing’s Lessee v. Higby, 7 Ohio (pt. 1), 198. In that case the heirs were miners, and two of them were not named in the petition, but their guardian, during its pendency, entered their, *506 appearance. The court held them bound by the order of sale, and decided that the proceeding could not be collaterally impeached. And in Ewing v. Hollister, 7 Ohio (pt. 2), 138, the same order was affirmed upon a writ of certiorari.
In Robb v. Irwin’s Lessee, 15 Ohio, 689, no process was served or issued; but the court appointed a guardian ad litem, for the infant defendants, who appeared and answered. This was held sufficient to give the court jurisdiction, and the title of the purchaser was protected.
In Snevely v. Lowe, 18 Ohio, 368, one of the minor heirs was not made a party to the petition, nor was any process issued or served. A guardian ad litem was appointed, who filed an answer for the minor heirs, without specifying whether for those named in the petition alone,' or for all the minor heirs of the decedent. But the court construed the answer to include them all, and held the proceedings effectual to transmit the title to the purchaser.
*Thus has the Supreme Court of the state, from the first to [506 the last, uniformly decided that an actual service of process upon the minor heir, was not necessary to give the court jurisdiction, or even to the regularity of the proceeding. That it was enough that a guardian, either specially appointed for the purpose, or having the care and custody of the infant’s person and estate, was before the court when the order was made. That it was not even indispensable that the infant should be named as a party in the petition ; and without directly affirming that the court could, obtain jurisdiction without having him in some way before them, I must think that the case of Snevely v. Lowe, can be supported-upon no other ground. In my opinion, it can not be upon the reasons assigned in the opinion.
These decisions have stood as the law of the state for more than twenty years. During all that time they have constituted rules of property, and upon the faith of them, men have invested their money. If ever an urgent case for the application of the maxim, stare decisis, existed, this is one. It is not enough that we should doubt their correctness, or that we should decide differently, if the question was now, for the first time presented. It must be made to appear clearly and unquestionably, that the rules of law have been violated, and the rights of the parties disregarded, before we could justify ourselves in questioning their authority. No such *507 case is made: the question was a doubtful one, and has been settled ; and our plain duty is, to let it remain settled.
In no one of these cases has the court gone further than the Supreme Court of the United States, in Grignous’ Lessee v. Astor, 2 How. 335, as will be seen by a particular examination of that case. I have not referred to the case of Adams v. Jeffries, 12 Ohio, 253, cited and relied upon by the plaintiff’s counsel, because the order of sale there involved, was not made under the act of 1824, but under that of 1831, which specially provided the mode in which* service should be made.
507] Those principles seem to us, conclusively, to settle the *case in hand. In this case, the heirs were all made parties to the petition, and service of process was regularly made upon the guardian appointed for them. If the court had power to appoint them a guardian, it had power to bring him into court in this manner; and if he was in court when the order was made, the jurisdiction of the court over him, and those he represented, can not be questioned. It is true, he filed no answer, nor does the record show that he accepted the appointment; but the want of an answer could not affect the jurisdiction, and we are bound to presume the court were advised of his acceptance of the trust, before proceeding to make the final order in the case.
II. The plaintiff’s remaining position may be disposed of in a. few words.
A very salutary principle of law was certainly invaded, when the administrator indirectly purchased at his own sale. While the property remained in his hands, or in the hands of any purchaser from him with notice, the sale could have been set aside in chancery, at the election of the heirs, and the property again put up. But it is not claimed, and certainly could not be, that this prevented the legal title from passing to McConnell, and notwithstanding the infancy of McConnell, from him to Israel Sheldon. If the land had belonged to McConnell, it need not be doubted that he could have disaffirmed this conveyance, by making another deed to the lessors of the plaintiff, after arriving at full age. But, aside-from the fact that the land had passed into the hands of a bona fide purchaser, long before this last deed was made, and making no account of his long acquiescence after arriving at majority, the law is perfectly settled, that an infant may, absolutely and irrevocably,,, execute a power either by absolute deed, or otherwise, as fully and *508 'effectually as an adult person. The authorities cited in argument ■.are full to this purpose. The privileges which the law allows him, rare given to protect his own interests, and not to enable him to disaffirm, acts done for others, not affecting his own property. He had no interest in this property. *He was the mere con- [508 duit-pipe through which the title passed for the benefit of Sheldon, and having no interest, he had no right to disaffirm his acts.
Upon the whole case, we are of the opinion that judgment must ¡be given for the defendant.
Bartley, J., dissented.