## Eyre & Ux. *v.* Storer & Ux.

Title to real estate can be acquired, passed, and lost, only in accordance with the laws of the country where it is situate; and the validity of every disposition of real property, whether testamentary or *inter vivos,* must depend upon those laws.

In respect to wills, the law of the place where real estate is locally situate,

governs as to the capacity or incapacity of the testator to devise, the extent of his power to dispose of the property, and the forms and solemnities necessary to give the will or testament its due attestation and effect.

By the statute of this State, a father domiciled here cannot deprive his posthumous child of the right to inherit his property, by a will making no provision for such child; and, so far as real estate situate here is concerned, it makes no difference that the father had his domicil and executed his will in another country; real estate here cannot pass under any will of the father, to the disinheritance of a child born after his death, and not provided for therein.

WRIT OF ENTRY, to recover an undivided half of certain premises, situate in Portsmouth, in this county, particularly described in the plaintiff's writ.

The parties agreed, that on the twenty-seventh day of June, A. D. 1832, Benjamin L. Lear, Esquire, counsellor-at-law, then and for a long time before and until the time of his death domiciled in the City of Washington, in the District of Columbia, was seized of one undivided half of the demanded premises, and the defendants, Mary L. Storer and George W. Storer, were and are seized of the other half; that in and by his last will and testament, dated on said 27th day of June, A. D. 1832, duly proved, approved and allowed in the District of Columbia, a copy of which soon after said Lear's death was filed and recorded in the probate-office in this county, in conformity with the statute in such case made and provided, said Lear bequeathed to the said Mary L. Storer all his property, real and personal, in said Portsmouth, during her life, remainder to Lincoln Lear Storer, who some time since deceased, intestate, leaving the said George W. Storer his sole heir at law; that said Louisa L. Eyre is the legitimate and only child of said Benjamin L. Lear, and was born in Washington, in May, 1833, after the death of her father, and that the plaintiff, Wilson Eyre, is the husband of said Louisa L. Eyre, and that the writ in this case is dated May 17, A. D. 1857.

Eyre *v.* Storer.

It was further agreed that since the death of said Lear, the defendant, Mary L. Storer, has been in possession of the whole of the demanded premises, except a part occupied as a life estate under the will of said Benjamin L. Lear, by Lucy Chamberlain, (now deceased;) and that the defendant, George W. Storer, claims the reversion of the half bequeathed by Benjamin L. Lear, as aforesaid.

It was further agreed that the annexed letter from J. B. H. Smith, counsellor-at-law, dated December 29, A. D. 1857, and addressed to Com. Storer, should be taken and considered in the same manner as the deposition of the said Smith on the subject would be, and should be evidence of the facts therein stated, to the same extent as his deposition would be.

And it was further agreed, that the questions arising on the above case shall be submitted to the court, to be decided by the presiding justice, or reserved and assigned for the determination of the whole court, as he shall think fit; and that judgment shall be rendered in this case according to such decision.

(Copy of Letter.)

"WASHINGTON, Dec. 29, 1857.

"Dear Sir: At your request I have examined our laws as to the effect produced by the birth of a posthumous child upon the will of the parent. The laws upon this subject in force in our district are the statutes of Maryland, and this statute is almost identical with the English statute upon the same subject. The statute of Maryland is as follows: 'All lands, tenements and hereditaments which might pass by deed, or which would, in case of the proprietor's dying intestate, descend to or devolve on his or her heirs, or other representatives, except estates tail, shall be subject to be disposed of, transferred and passed by his or her last will and testament or codicil.' "

There is no limitation in favor of a posthumous child, though such, by construction and for the purpose of inher-

itance, is put in the same position as though born in the lifetime of the parent.

Our courts, in construing this statute and giving it effect, have followed the decisions of the English courts, and allowed the fullest scope to the alienation by will of a person's property, real and personal; and will imply a revocation of his last will, only when, after the making of his will, there has been a total change of his circumstances, and that total change or alteration is "made to consist in the combination of the two facts of marriage and the birth of a child" after the making of the will.

This subject has been much debated in the English courts, and the result of their various decisions seems to be, and I think that the settled doctrine now, that marriage and the birth of a child after the making of a will, are, by operation of law, a revocation of such preceding will, and that both these circumstances must occur to cause such a revocation.

For these reasons I have been of opinion that the birth of a child, after the death of the late B. L. Lear, did not revoke his will as to the real estate in Washington devised by him.     Very respectfully,     J. B. H. SMITH.

Com. STORER, Pre'st.

*William H. Rollins*, for the plaintiffs.

The plaintiffs claim to recover one undivided half of the premises described in this writ.

1. The plaintiff, Louisa L. Eyre, is the posthumous and only child of B. L. Lear, (who, at the time of his death, was seized of said half) and is not named or referred to in his will, and is therefore entitled to all his property under the laws of this State. See act of July, 1822, N. H. Laws, (1830) title 79, chap. 1, sec. 3, page 355.

2. The *lex loci rei sitæ* governs the disposition of real estate. "The law of the place where the property is locally

situate is to govern as to the capacity of the testator, the extent of his power to dispose of the property, and the forms and solemnities to give the will its due attestation and effect." Story's Conflict of Laws 398.

This doctrine has been recognized in this State. *Hey-dock's Appeal*, 7 N. H. 496; opinion of *Parker*, C. J., in *Goodall* v. *Marshall*, 11 N. H. 91.

*Wm. H. Y. Hackett*, for the defendants.

The defendants, aware of the general rule that "*lex loci rei sitæ*" governs the disposition of real estate, resist the claim of the demandants, upon the principle of the case of *Saunders* v. *Williams*, 5 N. H. 213. The rule that the law of the domicil controls the disposition of the personal estate, is as well established as the rule that the "*lex loci rei sitæ*" controls the disposition of real estate. But it is the well settled law of this State, and this country, that the former rule will not be recognized in favor of a foreigner to the prejudice of our own citizens. What sound distinction can there be between the recognized rule in regard to the personal estate of a foreigner, and the rule I am contending for? The reason of the rule is the same. The point in *Saunders* v. *Williams* was not the nature of the property, but the *status* of the parties.

Where parties come from the same jurisdiction or different jurisdictions, into this State, with their disputes in regard to real estate here, our local laws of course control their rights. But the point I make is, that the demandants are foreigners: That by the laws where Mrs. Eyre was born, and where her father was domiciled, and made his will, and died, she could not, if the premises were located there, recover the demanded premises against the defendants, and that our courts will not enforce our local laws, (made for the protection of our own people) in favor of foreigners, to the prejudice of our own citizens: That as a matter of comity they could not be expected

to go farther than to give to foreigners the same rights and remedies which they had in their own jurisdiction; but that there is no comity or rule of law which authorize foreigners to claim, or compel our courts to allow, greater rights than they had at home, to the prejudice of our own citizens; and that where there is a conflict arising between the rule, as applicable to the *status* of the parties, and the rule applicable to the subject matter of litigation, our courts will follow the rule most advantageous to our own citizens.

2. It is quite clear that our statute did not contemplate, and was not intended to provide for such a case as this. It was intended not to abridge the power of the testator, but to supply his omissions, and is based upon the idea that it operates upon the whole estate, and upon all the heirs or devisees.

If the court give the effect to it claimed by the other side, it practically takes from the testator the power of making a will which in this State can operate in favor of our own citizens. His will is set aside as to property here, and, so far from furnishing, it destroys the uniform rule for the distribution of all real estate. It leaves the will in full force elsewhere, and in other jurisdictions excludes the New-Hampshire heirs by its own inherent force; and here the will is deprived of its beneficial effect upon the New-Hampshire heirs, by giving to our statute an effect not intended. In other jurisdictions the devisees hold by force of the will; here our own citizens are defeated by our local law, in derogation of the rule applicable to the *status* of the parties.

As an illustration of what would be the practical working of the rule against which I am contending, suppose Mr. Lear had left two other children, M and G, and that one half of his real estate had been in Portsmouth and the other half in Washington: That M lived in Washington, and G in Portsmouth; and Mr. Lear had, as he

naturally would have done, willed the real estate in P. to G, and that in W to M; then G must give up half of his share to Mrs. Eyre, and M would retain his full share, equal to the share of the other two children.

3. Besides, our statute was not only intended to act upon all the property and upon all the heirs and devisees, but it was made in contemplation of more than one child. No one can read the statute and resist that inference, or avoid the conviction that it was not intended to apply to such a case as this. The court will not give effect to the letter of the statute against its manifest spirit, where one of our citizens may be the sufferer.

The cases to which the demandant refers simply recognize the general rule, which of course I do not deny. But I say — 1. That the general rule does not conflict with my position.

2. That he has produced and can produce no case like this, where the demandant prevailed.

FOWLER, J. The general principle of the common law is, that the right and disposition of movables is to be governed by the law of the domicil of the owner, and not by the law of their local situation; while the laws of the place where real property is situate exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities which should accompany them. The title, therefore, to real property can be acquired, passed and lost, only according to the *lex rei sitæ*. Story's Conflict of Laws, secs. 376, 424, and authorities.

The validity of every disposition of real estate must depend upon the law of the country in which that estate is situate. *Curtis* v. *Hutton*, 14 Vezey, Jr., 537, 541; *Chapman* v. *Robertson*, 6 Paige 627, 630; *Elliot* v. *Lord Minto*, 6 Madd. 16; *Birtwhistle* v. *Vardill*, 5 B. & C. 438, [11 Eng. Com. Law 266.]

*Vattel* lays it down as a principle of international law,

that immovables are to be disposed of according to the laws of the country where they are situate. Vattel, b. 2, ch. 8, secs. 110, 103.

All the authorities, both in England and this country, recognize the principle in its fullest import, that real estate, or immovable property, is exclusively subject to the laws of the government within whose territory it is situate. See a very large collection of them, in Story's Conflict of Laws, (2d Ed.) 361, sec. 1428.

Among other applications of the general principle, Story says, if a person is incapable of transferring his immovable property by the law of the *situs*, his transfer will be held invalid, although by the law of his domicil no such personal incapacity exists. He instances, as an illustration, the case of a married woman, who may be authorized, by the law of her domicil, to alienate her land. Yet, if by the law of the *situs* she could not do so, her attempt to alienate, by deed or otherwise, would be wholly inoperative and *ipso facto* void. Conflict of Laws, sec. 431. Executory contracts respecting real estate, such as wills, must be in the form prescribed by the law of the *situs*, in order to pass title thereto, although good and regular according to the law of the domicil; and no conveyance or transfer of land can be made, whether testamentary, or *inter vivos*, except according to the formalities prescribed by the local law. The title to land in this country can be acquired and lost only in the manner prescribed by the law of the place where the property is situate. Story's Conflict of Laws, sec. 435; *United States* v. *Crosby*, 7 Cranch 115; *Cutter* v. *Davenport*, 1 Pick. 81, 86; *Hosford* v. *Nichols*, 1 Paige 220; *McCormick* v. *Sullivan*, 10 Wheaton 192; *Darby* v. *Mayer*, 11 Wheaton 465.

It is universally agreed that the law *rei sitæ* is to prevail in relation to all dispositions of immovable property, and the nature and extent of the interest to be alienated. If the local law prescribes that no person shall dispose, by

deed or will, of more than a half, or a third, or a quarter of his immovable property, or that he shall dispose of only a life estate in that property, such laws are of universal obligation, and no other or further alienation thereof can be made.  If the local law prohibits the alienation of certain kinds of immovable property, or takes from the owner the power of charging them with liens or mortgages, that law will exclusively govern in every such case, without regard to the domicil of the owner.  Story's Conflict of Laws, sec. 445.

In regard to wills, the doctrine is clearly established at the common law, that the law of the place where real estate is locally situate, is to govern as to the capacity or incapacity of the testator to devise, the extent of his power to dispose of the property, and the forms and solemnities necessary to give the will or testament its due attestation and effect.  Story's Conflict of Laws, sec. 474, and authorities.

The descent and heirship of real estate are exclusively governed by the law of the country within which it is situate.  No person can take except those who are recognized as legitimate heirs by the laws of that country, and they take in the proportions and the order which those laws prescribe.  This is the indisputable doctrine of the common law.  Story's Conflict of Laws, sec. 433, and authorities.

The foregoing principles have been distinctly recognized in this State.  *Heydock's Appeal*, 7 N. H. 496 ; *Goodall* v. *Marshall*, 11 N. H. 91.

The third section of the act of July 2, 1822, in force in this State at the decease of the plaintiff, Louisa L. Eyre's father, is in these words :

" Sec. 3. *And be it further enacted*, That if there be any child, or any lineal heir of a child, in the descending line, which has no devise or legacy by the will of the deceased father or mother, and which is not named or referred to in

the will in such manner as to show that it was not out of the mind of the testator at the time of the making of the will; or if any child shall happen to be born after the death of the father, and no provision shall have been made in his will for such posthumous child; every such child, or heir, shall inherit and have assigned to it the same portion in the estate of the deceased, as it would be entitled to, if such deceased person had died intestate; and if there be not sufficient personal estate left unbequeathed, or real estate undevised, to satisfy its just share in each, the same shall be made up and satisfied in a just proportion from the estate bequeathed and devised to others—provided that such portion shall be liable to be diminished by advancements made in the same way and manner as is prescribed by law in cases of intestate estates." Laws of 1830; 355, 356.

Under the provisions of this section, there can be no doubt that the father of Mrs. Eyre, if he had been domiciled in this State, could not, by any will making no provision for her, have deprived her of the right, as his only child and heir at law, to inherit his property. Being born after the death of her father, and in no way named or provided for in his will, she must have inherited all his property, as if he had died intestate; in other words, the will would have been wholly inoperative.

So far as the real estate situate in New-Hampshire is concerned, the domicil of the father, and the question whether or not, by the laws of that domicil, the birth of a posthumous child operated to nullify the will, are wholly immaterial. The statute of this State forbids the land being transferred by the devise of the father, to the disinheritance of a child born after his death, and not provided for in the will. By our laws, under the circumstances of the agreed case, Mrs. Eyre only, being the sole child of her father, can legally take and hold his lands situate here.

Nor does it make any difference that the plaintiffs are

not citizens of this State. Being citizens of the United States, and having come here to claim their rights to property situate within our limits, they are, under the Constitution of the United States, as fully entitled to the benefit of our laws, as if they were citizens of New-Hampshire. Besides, the principle which governed the decision in *Saunders* v. *Williams*, 5 N. H. 213, on which the counsel for the defendants appears to rely, has not, it seems to us, the slightest application to the circumstances of the present case ; or, rather, it conflicts directly with the claim of the defendants to the demanded premises. That principle was, that our courts would not give effect to the laws of a foreign country, transferring property situate here, where the operation of such transfer directly militated against our own laws. Applying this doctrine to the claim of the defendants, that, by the laws of the District of Columbia, the will of the testator operated to transfer the title to land here, in violation of the positive enactments of our statute, and it seems quite manifest that our courts could not consistently give effect to those laws of a foreign country in direct conflict with our own local regulations.

According to the provisions of the agreed case, the plaintiffs are entitled to judgment for the undivided half of the demanded premises, as claimed by them in their writ.

*Judgment for the plaintiffs.*