## JAMES ANDREWS *versus* NATHANIEL G. MARSHALL.

The fraudulent vendor or grantor parts with all his interest in the prop-
erty conveyed to his vendee or grantee ; the law affords him no aid, and
equity no relief in reclaiming it.

Property conveyed in fraud of creditors, is not liable to be seized and dis-
posed of by such creditors, otherwise than by authority of law ; and an
officer as their agent or legal representative has no greater power.

EXCEPTIONS. GOODENOW, J., presiding.

This is an action of trespass brought by the plaintiff as
mortgagee to recover the value of a stock of goods attached
by R. M. Lord, a deputy of the defendant, who was sheriff of
York county, at the time of such attachment.

The plaintiff claimed under his mortgage duly executed
and recorded, and the defendant justified under a writ Isaiah
Atkins and als., v. Jacob L. Chase, and said Andrews as his
trustee, contending that the mortgage to the plaintiff was
fraudulent and void, as to the creditors of Jacob L. Chase,
the mortgagor.

It appeared in evidence that the goods attached being a
part of the same as those conveyed by the mortgage, were

Andrews *v.* Marshall.

sold by the deputy, Lord, partly at private sale and partly at public auction, after the writ had been returned and entered in court, before any judgment was recovered in the actions on which the goods were attached, upon which writs it appeared that Chase has since been defaulted, that no account of the goods sold at private sale was kept by the officer selling them, and that no particular return of such sale has ever been made by said officer. Rufus M. Lord testified that Chase requested him to sell at private sale.

The goods were sold before judgment on the writs on which they were attached, upon a notice to the plaintiff to replevy them.

Upon this evidence the plaintiff's counsel requested the judge to instruct the jury that the sale before judgment was unauthorized by law, and that if they believed all or any of the goods were sold by Lord at private sale, and no account kept by him of such sales, then he would be a trespasser *ab initio,* and could not justify his taking and conversion of goods.

The judge declined to give this instruction and instructed the jury that although the officer might, by his irregularities in the sale, have become a trespasser *ab initio,* as regards Chase, yet the plaintiff in this action can derive no advantage from such irregularities. If they found the mortgage was made to defraud or delay creditors, that the defendant may justify under his attachment, and contest the validity of the mortgage to the plaintiff as to Chase's creditors, in the same manner as if his proceedings had been regular and legal. That if the mortgage was fraudulent, the defendant would be answerable to Chase, and not to the plaintiff for any such irregularities.

The verdict was for the defendant, and the plaintiff excepted.

*T. M. Hayes* and *R. P. Tapley,* counsel for plaintiff.

*Paine* and *Eastman,* and *Leland,* counsel for defendant.

CUTTING, J. The record discloses, *that* the plaintiff claims title to the property in controversy under a mortgage, duly executed and recorded, from one Jacob L. Chase.

*That* the defendant justifies the taking, and alleges, *that* as an officer he attached the property on a writ in favor of Isaiah Atkins and another against Chase, and contends *that* the mortgage was fraudulent and therefore void as against his creditors, whom he now represents.

The defendant pretends to represent creditors, and in order to sustain and continue that relation, it is contended, he must show that such affinity has been maintained throughout and not sundered by any illegal or unjustifiable act. This proposition was overruled by the presiding judge, who charged the jury "that although the officer might by his irregularities in the sale have become a trespasser *ab initio*, as regards Chase, yet the plaintiff, in this action, can derive no advantage from such irregularities. If they found that the mortgage was made to defraud or delay creditors, the defendant may justify under his attachment and contest the validity, as to Chase's creditors, of the mortgage to the plaintiff, in the same manner as if his proceedings had been regular and legal. That if the mortgage was fraudulent the defendant would be answerable to Chase, and not to the plaintiff, for any such irregularities."

This instruction is based upon the idea, that the mortgage, if fraudulent, was not only voidable by creditors, but was absolutely void even as between the contracting parties; otherwise Chase could have no remedy against a negligent or guilty officer; for he would be precluded by his own act from claiming title to the property.

In Osborne v. Moss, 7 Johns. R., 161, citing Hawes v. Leader, Cro. Jac., 270, and Yelv. 196, as also in Anderson v. Roberts, 18 Johns. R., 527, "it was decided, that if goods were conveyed to defraud creditors, the conveyance was void only as against them, but remained good as against the party, his executors and administrators." In the latter case, Spencer, C. J., in delivering the opinion, remarks, "the

error of those who assert, that a fraudulent grantee under the 13th of Eliz., takes no estate, because the deed is declared to be *utterly void*, consists in not correctly discriminating between a deed which is an absolute nullity, and one which is voidable only. No deed can be pronounced, in a legal sense, utterly void, which is valid as to some persons, but may be avoided at the election of others. In 2 Lilly's Abr., 807, and Bac. Abr., tit. Void and Voidable, we have the true distinction. A thing is void which is done against law, at the very time of doing it and where no person is bound by the act; but a thing is voidable which is done by a person who ought not to have done it, but who, nevertheless, cannot avoid it himself after it is done."

So, in Drinkwater v. Drinkwater, 4 Mass., 353, Parsons, C. J., says: "A conveyance to defraud creditors is good against the grantor and his heirs, and is void only as to creditors. For neither the grantor, nor his heirs claiming under him, can avail themselves of any fraud, to which the grantor was a party, to defeat any conveyance made by him." Also, in Dyer v. Homer, 22 Pick., 257, the same doctrine is reiterated: "The statutes of the 13th and 27th of Elizabeth, are the foundation of our doctrine of fraudulent conveyances. And whether they are in affirmance of the ancient common law or not, their principles have long been adopted here, and have, both in England and America, been a text upon this subject prolific of commentary. They expressly declare fraudulent sales and conveyances to be ' utterly void, frustrate, and of none effect,' ' *only* as against creditors ;' plainly implying, that between the parties they are valid and operative."

The same principle is recognized in Nichols v. Patten, 18 Maine R., 231.

In Miller v. Miller, 23 Maine R., 22, this court have decided, that where a creditor calls in question a conveyance made by his debtor, upon the ground of fraud, in an action between him and the grantee, the demand of the creditors must be subject to examination, in order to see whether he

has a right, as such, to question the validity of the conveyance.

And, indeed, without further citations, we may add, that the doctrine is established beyond controversy by nearly all the authorities touching this point, that the fraudulent vendor parts with all his title, and can in no event invoke his own turpitude for the purpose of reclaiming any interest in the property so conveyed. Consequently it is difficult to perceive how the officer can become accountable to Chase, the supposed fraudulent vendor, for any "irregularities," according to the instructions of the presiding judge.

Because Chase may have conveyed in fraud of his creditors, it by no means follows, that such creditors may seize and dispose of the property so transferred, otherwise than by authority of law; and an officer as their agent or legal representative has no greater power. To whom, then, is the officer accountable for his official acts? Certainly not to the debtor, the fraudulent vendor, for we have seen that his sale forever debars him from setting up any claim, and that such a sale on being shown in defence might, as against *him*, be a sufficient protection to the officer. No authorities bearing directly on this point, except one, have been cited, and we doubt if any other exists which would, under such circumstances, sustain a suit for damages. If otherwise, the law would relieve a man from the consequences of his own fraudulent acts.

It is true that in Daggett v. Adams, 1 Maine R., 198, the judge instructed the jury, "that if the conveyance was fraudulent, the plaintiff, (the fraudulent vendee,) had no right to look into the officer's proceedings at all, and their verdict must be for the defendant," which ruling was sustained by the court in that case, *under the pleadings,* in short by the following remarks : "In cases of this description, if the officer has conducted irregularly, he stands responsible in damages to the debtor, whose property he has illegally disposed of." "In this manner the rights of the *true owner* are protected. The *fraudulent* purchaser has no

Andrews *v.* Marshall.

rights as against the creditors of the vendor." This decision, we apprehend, cannot be sustained by either principle or authority, and none were cited by the learned counsel who contended for, or the court who pronounced it, but was rather an act of judicial legislation, promulgated, as the court say, in order " to introduce uniformity of practice."

Let the doctrine of this statute be tested. The statute of 13th Eliz. makes no distinction between sales of real or personal estate so far as it respects the rights of attaching creditors. A. conveys to B. his farm by a deed duly executed, and for the purpose of defrauding C., his creditor, as to whom only the conveyance is void. What, under such circumstances, would be C.'s rights and remedy ? The fee in the estate would be in B., for he might convey to an innocent purchaser, for a valuable consideration, ignorant of the fraud, as decided in Anderson v. Roberts, before cited, and confirmed by similar decisions in our own state. The creditors' remedy would consist, before such conveyance, in attaching the estate as the property of A., and perfecting his attachment by a judgment and a subsequent levy ; and even then B. might not be divested of his possession, which must be done by a writ, either at law or in equity, against *him*, and if by the latter by a subsequent decree for a specific conveyance. Webster v. Clark, 25 Maine R., 313 ; same v. Withey, Ib., 326, and cases there cited. In such an event the creditor must first show that he has exhausted his remedy at law, or in other words " he must first do all which the law will enable him to do to obtain a title in the mode pointed out by the statute, and then the court will assist him and prevent his being injured by the outstanding fraudulent title." And the mode pointed out by the statute is not for the officer to be so culpable and negligent in the discharge of his duties as to become a trespasser *ab initio ;* such a person in no sense could be denominated a proper representative of an honest and defrauded creditor. His return may show that he has caused interested appraisers to be appointed, who may have appraised the estate at one-third of *its*

value ; or if an equity, may have given no legal notice of the sale, and according to the authority of Daggett v. Adams, it is of no concern to the fraudulent vendee ; for such acts of the officer would lay a sufficient foundation in equity and good conscience to authorize a decree divesting him of title, although had the estate remained in the grantor, all such proceedings as to him would have been useless and absurd.   And such is this whole doctrine that a trespasser *ab initio* can represent an attaching creditor.   Suppose the creditor had taken possession of the property without the intervention of an officer, could he have justified as a creditor against a suit of the vendee ?   It was decided in Osborne v. Moss, where that question was distinctly raised, that he could not.   If not, can he be aided by the illegal acts of the officer.   An affirmative answer would mar the whole symmetry of the common law, which, notwithstanding all that has been said to the contrary, approaches nearer to " the perfection of reason " than many of the acts of modern legislation.

The true rule to be deduced from the act of the 13th of Eliz., and the authorities applicable thereto, is this :   The fraudulent vendor or grantor parts with all his interest in the property conveyed to his vendee or grantee, the law affords him no aid, and equity no relief in reclaiming it.   The fraudulent purchaser obtains a perfect title against the claims of all persons excepting creditors, and under the 27th of Eliz., subsequent purchasers.   The creditor, in order to avail himself of the property or estate so conveyed, must pursue his remedy by suit at law or in equity, and in some instances, as we have observed, both processes may become requisite. The relation subsisting between the attaching creditor and the executive officer should not be sundered by such irregularities as would render void his proceedings from the beginning. In which event the purchaser representing his vendor can, in his own name and as the possessor of the property, bring both creditor and officer to account for their unwarrantable interference.   And he has to all intents and purposes the

same rights and is subject to the same liabilities the debtor would have and incur, had the property never been conveyed from the one to the other.

This rule inflicts no unnecessary hardship upon the creditor or the officer; it only prevents them from committing wrong, and setting up one fraud in bar of another. The creditor has no reason for complaint—he has his remedy against the unfaithful officer, besides his *statute* remedy against the fraudulent purchaser.

*Exceptions sustained.*
*Verdict set aside, and a new trial granted.*

DAVIS, J., *dissenting.* I concur with my associates in overruling the case of Daggett v. Adams. The principle there stated, so far as it applies to *vendees in possession,* cannot be sustained.

But I must dissent from the opinion in this case, because the plaintiff was not a vendee, in the usual sense of that term. He was only a mortgagee, who had not taken possession. His rights were not those of a purchaser. They rested in contract, merely. If that contract was void, he had no rights. As to the creditors of the mortgagor, the contract was void, and the mortgagor was the owner. If, as to the creditors, the mortgagor was the owner, it was competent for him to consent that the goods might be sold on mesne process, and at private sale. He gave such consent; and the sale so made by his consent was as valid as if it had been made at public auction, on the certificate of appraisers. And the plaintiff, if the mortgage to him was fraudulent as to creditors, was not injured by such sale. He had no claim to be consulted by them in regard to the sale. As to them, the mortgagor was the only party in interest. To allow the mortgagor to maintain this action, is to give the aid of the court in enforcing a fraudulent contract against the very parties as to whom the statute pronounces the contract void.

It is said that the defendant in trespass cannot justify by pleading property in another, without showing an interest in

himself from such owner. And it is therefore argued that the defendant can justify only by showing an attachment and sale according to the provisions of law. This would have been so if the mortgagee had been *in possession.* But as he had never taken possession, it was otherwise. If a plaintiff in trespass was not in possession at the time of the taking, the defendant may plead property in another, without showing any interest in himself from such owner. 13 Johns., 276. If it were not so, he might be deprived of his defense, and still be liable to the true owner in another action. I am therefore of opinion that the rule laid down in the case of Daggett v. Adams is erroneous so far only as it applies to vendees, to whom the property has been actually delivered.