## APPERSON, Ex'r, vs. BOLTON et al.    BOLTON vs. SIGLER and wife.

1. CONFLICT OF LAW: *Lex rei sitæ controls the alienation and descent of land.*

    The alienation and descent of real estate is governed by the laws of the state or country in which it is situated.

2. — *Right of dower subject to the lex rei sitæ.*

    The right of the widow in the lands of her husband; the time and manner of assigning, and the causes that may defeat her dower, are all determined by the laws of the state in which the lands are situated.

3. WILLS: *When a provision for the wife held to be in lieu of dower.*

    Where a testator makes a provision for his wife, and proceeds to dispose of all the remainder of his property, it will be presumed that the provision was intended in lieu of dower.

4. CONFLICT OF LAW: *Effect of a will made and admitted to probate in another state.*

    A will which was executed and admitted to probate in Tennessee is as valid to dispose of real estate situated in this state, as if made and admitted to probate here.

5. — *Election of widow to renounce a provision and take dower, controlled by the lex rei sitæ.*

    The right of a widow to renounce the provisions of a foreign will and take dower out of the lands of her deceased husband, situated in this state, is governed by the laws of this state, and the proceeding must conform to our statute.

6. FOREIGN EXECUTOR: *Source of his authority, and when he may sell Arkansas lands.*

    By the provisions of a will made in Tennessee, the executor was authorized to sell the lands of the testator in that and other states. *Held,* 1st, when the will was properly probated in Tennessee, and letters testamentary granted, the will, and not the letters, was his authority to sell the land; the letters were merely evidence of the authority conferred by the will; 2d, he could not sell the Arkansas lands under the will until it was admitted to probate and recorded in this state, but it was not necessary for him to take out letters here in order to sell.

Apperson, Ex'r, vs. Bolton et al.   Bolton vs. Sigler and wife.

7. FOREIGN EXECUTOR AND DOMESTIC ADMINISTRATOR: *Right to the land.*
   Where a will is made and probated in another state, and an adminis
      trator is appointed in this, lands situated here are assets in the hands
      of the administrator for the payment of domestic debts, and the for-
      eign executor cannot disturb his possession for the purpose of sell-
      ing them, until such debts and the cost of administration are paid.

APPEALS from *Desha* Circuit Court.
Hon. M. L. STEPHENSON, Circuit Judge.
*Hutchinson*, for Apperson.
*Rose*, for appellant.
*Weatherford*, for Mrs. Sigler.
*Pindalls*, for Bolton.

ENGLISH, C. J.   These are separate appeals and separate
transcripts, but they are branches of one original suit in the
court below.   The first appeal involves the right of Mrs. Sigler
to dower in the Arkansas lands of Isaac L. Bolton, deceased.
The second appeal grew out of a contest between E. M. Ap-
person, a Tennessee executor, and Seth W. Bolton, an Arkan-
sas administrator, for the control of the Arkansas lands of
Wade H. Bolton, deceased.   This appeal also involves the
dower right of Mrs. Lavinia A. Bolton in the same lands.

The original bill, from which the litigation in its several
branches sprung up, was filed by Wade H. Bolton, in his life
time, on the 9th of February, 1869, in the Desha circuit court,
against the representatives of Isaac L. Bolton, for partition of
lands owned by them jointly in Arkansas.   During the pend-
ency of the suit in the court below, Wade H. Bolton died, and
E. M. Apperson qualified as his executor in Tennessee, and
Seth W. Bolton was appointed administrator of his estate in
Arkansas.

The lands were partitioned by the final decree, rendered
November 2, 1871, and dower decreed to Mrs. Lucinda Sigler,

widow of Isaac L. Bolton, who had, after his death, intermarried with Wm. A. Sigler, in the share of the lands partitioned to him, and from this branch of the decree, Seth W. Bolton, who claimed the lands as devisee of Isaac L. Bolton, appealed.

The court decreed to Seth W. Bolton, the Arkansas administrator of Wade H. Bolton, the control of the share of the lands partitioned to him, and awarded to Mrs. Lavinia A. Bolton, his widow, an absolute estate in one-half of his share of the lands for her dower.

From this branch of the decree E. M. Apperson, the Tennessee executor of Wade H. Bolton, who had been substituted as plaintiff in the original bill, procured the allowance of an appeal from the clerk of this court.

I. We will first consider the questions arising upon the appeal of Seth W. Bolton, from so much of the decree as allowed dower to Mrs. Sigler in the lands of Isaac L. Bolton.

The facts material to be stated on this branch of the case are in substance as follows:    Isaac L. Bolton and Wade H. Bolton, who were both citizens of Shelby county, Tennessee, and died there, were the joint owners of a large plantation situated in Desha county, Arkansas, called the Belcoe Lake place, and Isaac L. Bolton was also the owner of one-half of a small place, situated in the same county, known as the Graves place.    It was for partition of the Belcoe Lake place that Wade H. Bolton filed the original bill.    Isaac L. Bolton made his will at his home in Shelby county, Tennessee, on the 9th of October, 1863.

The second item of the will was as follows:

"I give to my wife, Lucinda Bolton, five thousand seventy-seven dollars and fifty cents in gold, that I have already given her, which comes in as a valuation to her of that amount, and charge to her out of my estate, which amount of money went

into her possession some ten days ago, and charged to her in my valuation book."

By the *third* item, he gave to his daughter, Louisa Dickens, lands, slaves and other property, valued at $17,940.

In the *fourth* item, he states that he had given to his daughter, Josephine Dickens, lands, slaves, etc., valued at $12,075, then adds—

" The balance of my property in Tennessee, both real and personal, I wish sold by my executor, and proceeds delivered unto my two daughters, Wade and Loucassia, until they reach in valuation the amount that Louisa has had.  Also, Josephine to be brought up in valuation to Louisa.  My wife, Lucinda Bolton, after valuing to her the $5,077.50, already given to her by me, is to have property valued to her until her valuation reaches fifteen thousand dollars, which property is in loan to her for her support during her widowhood or natural life.  But whenever she marries, this property to go to my legal heirs.  But should she never marry, this property to be hers, or in use for her, during her natural life, then to descend to my legal heirs.  *  *  *  I give to my son, Seth W. Bolton, my entire interest, both real and personal, in Desha county, Arkansas, by his paying to my estate, or other heirs, the $15,000 I have paid for the places, with the exception of my interest in the Graves' place, the proceeds of which I want appropriated, after selling it, to my other heirs.  After all my children be equal to Louisa, then the balance of my estates, if any, to be equally distributed amongst my children, the valuation of negroes to be equalized."

Some of his slaves, which are named, he desired his executor to set free, on account of their fidelity, and one of them particularly, because of her devotion to him when the "jayhawkers" were after him.  The balance of his servants, he wished his executor to ship to Cuba, or some other bad place, on account of their devotion to Abraham Lincoln.

He named Wade H. Bolton as his executor, who, it seems, did not qualify.

Isaac L. Bolton died some time in the year 1864, and his will was proven and admitted to record in the county court of Shelby county, Tennessee, Jan. 3, 1865; and Francis M. Cash was afterwards appointed administrator with the will annexed.

The answer of Sigler and wife (formerly Lucinda Bolton) to the original bill was made a cross-bill, and filed April 27, 1869. They aver, after admitting the allegations of the bill, that Isaac L. Bolton and Lucinda were married in 1863 [she was his second wife] and lived together as husband and wife in Shelby county, Tennessee, until his death, which occurred in the year 1864. That he made a will, which was duly probated, etc., which was made an exhibit to the original bill, the substance of which is above stated.

That Lucinda elected to dissent from the provisions made for her therein, in lieu of dower, and proceeded to do so in legal form; in proof of which a transcript from the records of the county court of Shelby county, Tennessee, and a transcript from the records of the first chancery court of the same county, were referred to, which will be more particularly noticed below. It was further averred in the cross-bill, that said Lucinda was not required to elected whether she would take the bequest made to her in the will, or dower in Arkansas, until the probate of the will in Arkansas, which was only done during the then present year (1869).

That no administration had ever been applied for, or granted, upon the estate of Isaac L. Bolton, in Arkansas.

That Francis M. Cash had been appointed administrator in Tennessee, and paid all his debts, etc. Prayer for dower in the Arkansas lands, etc.

In the answer of Seth W. Bolton to the cross-bill of Sigler and wife, he denies that said Lucinda is entitled to dower in

the Arkansas lands of Isaac L. Bolton, deceased, because he made a pecuniary provision for her in his will, which was intended to be, and was, in lieu of dower in his lands, etc. Avers that she did not enter upon said lands, or commence proceedings for the recovery or assignment of dower therein, within one year from the death of said Isaac L. Bolton; and submits that she is conclusively deemed to have elected to accept the provisions made for her in the will, and to have waived her right to dower in said lands, etc.  He also avers that she had been fully endowed of the lands of her said husband by the probate court having jurisdiction of said estate.

On the hearing, Sigler and wife offered in evidence a paper purporting to be a transcript from the records of the county court of Shelby county, Tennessee, showing that on the 3d of January, 1865, on the application of Lucinda Bolton, widow of Isaac L. Bolton, commissioners were appointed to allot and set apart from the estate of said Isaac L. Bolton, one year's support for said widow and her family; also to assign and set apart to her, by metes and bounds, one-third part of the lands of said deceased as dower to and for the said widow, and that they report to the next term of the court, etc.   This paper was made exhibit A to the original bill, and referred to in the cross-bill of Sigler and wife.   On the objection of Seth W. Bolton, the court refused to permit this paper to be read in evidence, because the certificate of authentication was not signed by the clerk of the court, etc.

Whether the court below erred in excluding this transcript need not be decided, inasmuch as the decision was in favor of Seth W. Bolton, who is the appellant in this branch of the case.

Sigler and wife were permitted to read in evidence, against the objection of Seth W. Bolton, a transcript from the records

of the first chancery court of Shelby county, Tennessee, duly authenticated.

From this transcript it appears that on the 15th of October, 1867, a petition for dower was filed by Sigler and wife in a cause then pending in that court, styled *Josephine Dickens v. Samuel Dickens et al.* In this petition it was stated, in substance, that Lucinda Sigler was the widow of Isaac L. Bolton, who died in the year 1864, in Shelby county, having made a will, by which he disposed of his large and valuable estate.

That she had dissented from the will, and dower had not been assigned, although she had been residing on part of the land, with a general understanding that as the part occupied was less than her dower right, she would be compelled to pay no rent. That all the parties in interest were before the court, and were willing that her dower should be assigned without delay in that cause. That the testator (Isaac L. Bolton) left his home place, 1801 acres, interests in town lots, other large and valuable interests in real estate in Shelby county, besides valuable lands in Arkansas. That the land on which his daughter Louisa was residing was part of his estate, containing 520 acres, and was very valuable. Prayer for reference to the master to ascertain and report what lands testator died seized and possessed of, and out of which petitioner, Lucinda, was dowable; and that dower be assigned her on the coming in of the report.

The court made an order of reference, as prayed, and directed the master also to enquire whether, as alleged in said petition, said Lucinda had dissented from the will, and was entitled to dower as claimed. The master made his report on the 16th of November, 1867. He found that said Lucinda was the widow of Isaac L. Bolton, deceased, and that she dissented from his will.

States and describes the lands of which he died seized and

possessed in Shelby county, and that he also owned some lands in Arkansas, the quantity and value not known.

Also states the facts in relation to the claim of his daughter Louisa, to the land occupied by her, etc.

No exceptions being made to the report, it was confirmed.

Then follows the decree of the court, thus:—"And it appearing from said report, and the proofs in the cause, that Isaac L. Bolton died in the county of Shelby, Tenn., in 1864, leaving the petitioner in this application for dower, his widow, and that she has since intermarried with W. A. Sigler. That said Bolton disposed of his estate by last will and testament. That said widow, not being satisfied with the testamentary provisions in her favor, dissented, in accordance with the law governing such cases, and that by virtue of such dissent, as shown, she is entitled to dower out of the real estate of which the said Bolton died seized and possessed," etc. ; and proceeds to decree her dower in the Shelby county lands and lots described in the master's report, and to appoint commissioners to lay it off to her, reserving for future determination the question of her right to dower in the land claimed by Louisa, etc., and adding: "That nothing in this decree shall be held to preclude the right of said Lucinda to apply to the proper tribunal in the state of Arkansas for dower out of the lands that said Bolton died seized and possessed of in that state." Afterwards, the commissioners, appointed to lay off the dower, made their report, which was confirmed, etc.

From a bill of exceptions, taken by Seth W. Bolton, at the hearing in the court below, it appears that the court found the facts to be, that Isaac L. Bolton died in 1864, seized of the lands in Desha county, in controversy, leaving said Lucinda his widow, etc. That he left a will which was duly probated in Shelby county, Tennessee, the place of his domicile, and that his widow elected to take dower instead of

the provision made for her in said will in lieu of dower. That said election was made as required by the laws of Tennessee, where the said Isaac L. Bolton died, and where his will was made. That she did not enter upon said Arkansas lands or commence proceedings to recover the same, or have her dower assigned, or execute or record any relinquishment of the provisions made for her in lieu of dower before the filing of her cross-bill in this case.

The court declared the law to be, " that the laws of Tennessee must govern in the manner and time of the widow's election to take dower." And refused to declare the law to be: " 1. That the laws of Arkansas must govern in the manner of election. 2. That unless the widow entered upon the land, or commenced proceedings for the possession, or for the assignment of dower within one year after the death of her husband, she would be conclusively presumed to have accepted the provisions of the will."

The aleniation, transmission and descent of real estate is governed by the laws of the country or state in which it is situated. This rule is general, and there is no diversity of opinion about it. So, the general rule is, that the right of dower in real estate is governed by the *locus rei sitœ*. The widow has dower, not by the law of the place of the marriage nor of the domicile, but according to the law of the place where the particular lands are situated. The laws of Louisiana do not give dower, yet, if a marriage be contracted in that state, or if the husband and wife be domiciled there, and the husband die, leaving lands in Arkansas, the widow may have dower of those lands according to the laws of this state.

So, if they are domiciled in a state where dower is restricted to the lands of which the husband died seized, as in Tennessee, and the husband own lands in a state where the rule of the common law prevails, as in this state, the widow will be

entitled to dower according to that rule, in all lands of which he was so seized during the coverture, except so far as she has relinquished her right, or is otherwise lawfully barred.　The extent of the rights of the widow in the lands of her husband is determined entirely by the laws of the state where the lands are situated.　*Garland, Adm'r, v. Rowan*, 2 Sm. & Mar., 617 ; *McCormick v. Sulivant*, 10 Wheat., 202 ; 2 Scribner or Dower, 24; Story Confl. Laws, secs. 448, 454 ; *Duncan v. Dick*, Walker (Miss.), 288 ; *Jones v. Gerock*, 6 Jones' Eq., (N. C.) 190.

It may be affirmed, says Judge STORY, without hesitation, that independent of any contract, express or implied, no estate can be acquired by operation of law in any other manner, or by any other means, than by the *locus rei sitæ*.　Thus, no estate in dowry or tenancy by the curtesy, or inheritable estate, or interest in immovable property, can be acquired, except by such persons, and under such circumstances, as the local law prescribes.　Confl. Laws, sec. 448.

Isaac L. Bolton was domiciled in Tennessee; he made his will and died in that state, but his widow, Mrs. Sigler, sought by her cross-bill to have dower assigned to her in his Arkansas lands.　Her right to dower, its quantity, the mode of assigning it, the time within which her application must be made, and the causes which may defeat it, must all be determined by the laws of this state, in which the lands, in which she claims dower, are situated.

The provisions of the dower statute of this state, in force when Isaac L. Bolton made his will, applicable to or bearing upon the question before the court are as follows : " If land be devised to a woman, or a pecuniary or other provision be made for her by will in lieu of her dower, she shall make her election whether she will take the land so devised, or the provision so made, or whether she will be endowed of

the lands of her husband." Gantt's Dig., 2222. "When a woman shall be entitled to an election," etc., (under the preceding section), "she shall be deemed to have elected to take such   *   *   *   devise or pecuniary provision, unless, within one year after the death of her husband, she shall enter on the lands to be assigned to her for her dower, or commence proceedings for the recovery or assignment thereof." Id., sec. 2223.   See also, secs. 2234–5, 6, 7.

It is not expressly stated in the will of Isaac L. Bolton that the provision made therein for his wife was to be in lieu of dower, but such was manifestly the intention of the testator, for it appears upon the face of his will that after making provision for his wife, he otherwise disposed of the entire remainder of his estate.   Looking at the face of the whole will, any inference that he intended her to have the provision made for her and dower also is excluded by its provisions.   2 Scribner on Dower, 455, etc.

That the will was duly executed, admitted to probate in Tennessee, and also in this state, is conceded by the cross-bill of Mrs. Sigler.

The will was therefore as valid to dispose of real estate of the testator situated in this state, though made in Tennessee, as if made and admitted to probate in Arkansas.   Gould's Dig., ch. 180, sec. 36, 37 ; see also Code provision, Gantt's Dig., sec. 5784.

Mrs. Sigler does not claim that she elected to take dower instead of the provision made for her by the will, within the time, nor in either of the modes prescribed by our statute. She avers, and it may be conceded that she proved that she made her election in Tennessee, and it may also be conceded that such election was made within the time and in the mode prescribed by the laws of Tennessee, though the laws of Tennessee on this subject were not proven at the hearing of the cause in the court below.

Her husband died in 1864, her cross-bill for dower in the Arkansas lands was not filed until April 27, 1869.   She alleges that she was not bound to make her election until the will was probated in Arkansas, which was not done until the year 1869.   But, whatever may be the law of Tennessee, our statute required her to make her election within one year after the death of her husband, and a widow must make her election within the time prescribed by law.   2 Scribner on Dower, 473; *Palmer v. Voorhis,* 35 Barb., 482.

Her election had to be made in one of the two modes provided by the statute:  First, by entering on the lands to be assigned to her for dower.   This she could not do in Tennessee, because the lands were situated in Arkansas.   Second, by commencing proceedings for the recovery or assignment of her dower in the land.   This she could only do in the courts of Arkansas, for the Tennessee courts could have no jurisdiction over lands in Arkansas.   But it has been suggested that if a dissent in Tennessee is not a valid dissent in Arkansas, an acceptance of the provisions of a will in Tennessee would not be binding here; and that if Bolton had devised to his wife his whole estate in Tennessee, no matter how large, she might have accepted it, and then dissented in Arkansas, and claimed dower in the estate here.   But we think, though the point is not before us, that she would not be permitted to do that, for it is a general principle of law that one cannot claim under a will and against it too, and an acceptance of the provisions of the will in Tennessee would bind her every where.   *Jones v. Geroch,* 6 Jones Eq. (N. C.), 194; *Blunt et al. v. Gee et al.,* 5 Call (Va.), 492.

The time allowed a widow to make her election between a provision made for her by will, and dower, varies in the different states.   The statutes of some of the states allow a shorter, and of others a longer time than ours.   2 Scribner, 475–6.

From motives of public policy, it may be supposed, our statute requires the election to be made within one year after the death of the husband.   The Revised Statutes of Indiana, it seems, omit to fix the time within which the widow shall elect, and it is held in that state that she may make her election at any time, and that lapse of time will not affect her right to take under the law.   2 Scribner, 477; *Piercy v. Piercy*, 19 Ind., 467.

Now suppose a man domiciled in Indiana, and having an estate there, and also an estate and owing debts in Arkansas, make provision for his wife by his will in Indiana, and five years after his death she elects to claim dower in his estate there, and then applies for dower in his Arkansas estate, having made no previous election here.   In the meantime letters of administration may have been taken out upon his estate here, the lands sold to pay debts, and the administration closed.   Our courts would hardly allow her dower, upon her late Indiana election, against the purchasers of the lands at the administrator's sale.

In some of the states, and we believe in Tennessee, a widow is allowed a year to dissent after the probate of the will.   A failure to probate the will for a number of years after the death of the testator, might produce the result in Arkansas as above indicated.

Our conclusion is that Mrs. Sigler was barred of her right of dower in the Arkansas lands.   The decree of the court below in her favor must be reversed, and the cause remanded with instructions to the court to dismiss her cross-bill.

II.   On the appeal of Apperson, Ex'r, etc.   On the 10th of August, 1868, Wade H. Bolton made his will, at his home plantation, in Shelby county, Tenn.   He devised $5,000 to Seth W. Bolton, on condition that he aided in defending a suit pending against him and the estate of his brother, Isaac

L. Bolton, the father of Seth, in the chancery court of Shelby county, prosecuted, as it is repeatedly stated in the will, by "Old Tom. Dickens, and his ally, Sarah W. Bolton." He made other money devises, and among them, $10,000 to the widow and children of Stonewall Jackson; provided for the establishment of a free school for the education of the poor, and made gifts to a number of his former slaves who had been faithful to him. The whole will is a curiosity, but the only clause material to this controversy is the 15th, which is as follows:

"I hereby instruct my executor, if he thinks best, to sell all my real estate in Tennessee, or any other state, everywhere, together with my Hoboken farm, where I reside, reserving the dower of three hundred acres given to my wife [Lavinia A. Bolton], her lifetime."

He appointed E. M. Apperson, of Memphis, his executor, without security. At the end of the will, as it appears in the record before us, is this evidence of probate:

"Proven at the August term, 1869, and ordered to be recorded. Recorded August the 9th, 1869." Signed by the clerk of the county court of Shelby county. Letters testamentary were granted to Apperson 10th of August, 1869.

At the time Apperson was substituted as plaintiff in the original bill, October 28, 1869, he filed a certified copy of the will and of his letters testamentary. On the 27th April, 1870, Apperson filed a supplemental bill, in which he stated that Seth W. Bolton had been discharged in bankruptcy, and purchased at a sale made by his assignee, all the interest he had in the land described in the original bill, etc. Also that Seth W. Bolton had recently qualified in the probate court of Desha county, Ark., as administrator of the estate of Wade H. Bolton, deceased; and he makes him a defendant, as such administrator, and prays as in the original bill.

In the meantime, on the 11th of February, 1870, Seth W. Bolton, as administrator of Wade H. Bolton, deceased, filed a bill for injunction against E. M. Apperson, in the Desha circuit court, in which he alleged in substance :

That Wade H. Bolton died possessed of interests in lands in Desha county, which were the subject of litigation in a suit pending in the Desha circuit court to determine the extent and value of his interests, etc. ; that plaintiff was the duly appointed administrator of the estate of said Wade H. Bolton, and as such, entitled to have control of and administer his estate in Arkansas; that one claim of $1,200 in favor of Oscar F. Parish, a citizen of Desha county, Ark., had already been exhibited, allowed and classed against said estate in the probate court of Desha county, and plaintiff was informed that there were other claims due to citizens of Arkansas against said estate yet to be exhibited, the amount and nature of which were unascertained, and that there were no other assets in this state for the payment of said claims except the interests of said Wade H. Bolton in said lands.

Plaintiff was informed that Wade H. Bolton made a will, but that it had never been probated in this state, or in accordance with the laws thereof, and was not in the possession or under the control of the plaintiff.

That E. M. Apperson, a citizen of Memphis, Tenn., had advertised the interests of Wade H. Bolton in said Desha lands to be publicly sold on the 14th of February, 1870, under some pretended authority derived from said will ; and that if the sale took place, and Apperson got the proceeds, there would be nothing left in the hands of the plaintiff to pay the Arkansas creditors.

That Wade H. Bolton died seized of an undivided half interest in certain lands in Desha, which are described, and which are the Belcoe Lake lands, as described in the original

bill for partition; that his interest in these lands was subject to the settlement of partnership matters between him and Isaac L. Bolton, to whom the lands jointly belonged, which was the subject of an undetermined suit in chancery, etc.

That Wade H. Bolton also claimed an undivided half interest in other Desha lands, which are described, and which Isaac L. Bolton had sold to James H. Branche, and which were also in litigation.

That these were the interests in lands which Apperson had advertised for sale, and that until the determination of said suits, the extent and value of Wade H. Bolton's interests in the lands was uncertain, and would be sacrificed by a sale.

Prayer, that Apperson be enjoined from selling the lands. The bill was presented to the probate judge of Desha, before it was filed, and a temporary injunction granted by him, under the code.

Apperson answered, in substance, that the will of Wade H. Bolton was duly probated in Shelby county, Tennessee, in 1869, and he was executor, etc. That said will was also duly of record in the county of Desha, according to the laws of Arkansas. That his testator died seized of real estate in Desha county worth more than $25,000; and sets out the clause of the will empowering him to sell the real estate, and claims that by virtue of the will, and his letters testamentary, he was invested with full and exclusive authority to sell the Arkansas lands.

That Seth W. Bolton was aware of these facts when he obtained letters of administration from the probate court of Desha — that he was a party to the original suit for partition, where the will was made a matter of record; and that the will had been left for record with the clerk of the probate court of Desha county at the time he obtained his letters of administration. Admits that he had advertised the lands for sale, because in

his best judgment, it was advisable, under all the circumstances, to sell them.    That the lands were unprofitable, and the taxes on them heavy, and there was about to be assessed upon them a very heavy levee tax, which he thought best to avoid the payment of by selling them — that a great portion of them were improved and fit for cultivation, and at the time they were advertised, lands of that description were selling at good prices, and that he expected to realize for them at the sale their full value.    Denies that his object in making the sale was to remove the proceeds to Tennessee, and hinder or delay the Arkansas creditors.    Denies that his testator owed any debts to citizens of Arkansas, at the time of his death.    Avers that the partnership matters between his testator and Isaac L. Bolton had been settled, and that his testator had a clear right to one-half of the Belcoe Lake plantation, which only awaited partition as prayed in the original bill pending for that purpose.    Admits that the claim of his testator to the other lands named in the bill was undetermined in a pending suit, but believed half of them would be decreed to him, and there was no good reason why his interest should not be sold.    Makes his answer a cross-bill; alleges that the letters of administration of Seth W. Bolton were obtained by fraud, and that the debt of Parish was unjust and unfounded.    That there were no just claims against his estate in Arkansas, and that he had money in his hands to pay all just claims, etc.    Prayed that the injunction obtained by Seth W. Bolton might be dissolved; that he be enjoined from further meddling with the estate, and his letters revoked.

Seth W. Bolton answered this cross-bill, reaffirming the allegations of his bill, and denying all fraud, etc.

The court, upon these pleadings, refused to dissolve the injunction granted by the probate judge, and also refused the injunction prayed by Apperson, but made an order restraining

either party from selling the lands until the pending litigation relating to them was determined.   These pleadings, etc., were read on the hearing of the original cause for partition, etc.

After decreeing that the lands described in the original bill be partitioned equally between the representatives of Wade H. and Isaac L. Bolton, and awarding dower to Lavinia A. Bolton in the share of Wade H. Bolton, and appointing commissioners to divide the lands, etc.; the court further decreed that Seth W. Bolton, administrator of the estate of Wade H. Bolton, deceased, have the possession of the residue of the share of Wade H. Bolton, after the assignment of dower, to be by him administered according to law.

On the hearing, no evidence was introduced on this branch of the case, other than the exhibits accompanying the pleadings.

There were numerous other pleadings, and cross-pleadings, between the representatives of Isaac L. Bolton, which it is not necessary to notice, because they were withdrawn at the hearing.

Wade H. Bolton, by his will, appointed Apperson his executor, and empowered him to sell his real estate in Tennessee, or in other state.   When the will was properly probated in Tennessee, and letters testamentary granted to him, the will was his authority to sell lands there, and not his letters.   They were merely evidence of his authority to execute the power conferred upon him by the will.   But he could not sell the Arkansas lands under the power conferred upon him by the will, until the will was properly admitted to probate in this state, under our laws.   And when so admitted to probate and recorded, it was not necessary for him to take out letters here in order to sell the Arkansas land.   *Crusoe v. Butler and wife*, 36 Miss., 171; *Lewis and wife v. McFarland*, 9 Cranch, 150; *McCormick v. Sullivant*, 10 Wheat., 202; *Carmichal v. Elmendorf*, 4 Bibb, 484; *Mosby v. Mosby*, 9 Gratt., 584.

In *Crusoe v. Butler and wife*, the testator was domiciled in Alabama, and the subject of the suit was real estate sold by his executor in Mississippi without taking out letters there.

The court said: "Another, and a very material question presented is, whether it was necessary that letters testamentary should be granted to the executor in this state, upon admitting the will to record here.  It is insisted, in behalf of the defendants in error, that as no such letters were granted here, the executor was never invested with the authority to exercise the power to convey the lands conferred upon him by the will, and hence, that his deed is void.  This question is intimately connected with the one last considered.

"The grant of letters testamentary, as authority to the executor to act, has reference to the personalty and the ordinary office of administration.  Generally, it has no reference to real estate, and can give no power over it to the executor.  For aught that appears in this record, there was no personalty in this state to administer, and no necessity for a grant of letters here.  The only necessity for taking any steps here, in relation to the will, appears to be to make it evidence in our courts.  The will granted a power not appertaining to the subject-matter of administration under the authority of our probate courts — a trust committed by the testator to the persons who should become his executors.  In such a case, the executor derives his authority from the will, and not from letters testamentary; and such letters could have conferred no power over the land, except what was given by the will.  It is true, his character and capacity as an executor must be established by proof of the will.  But when the will was admitted to probate here, and it was shown that he had taken upon himself the office of executor, the power to sell the land, which was independent of his appropriate functions as executor, became vested.  Under the circumstances of the case, the only

necessity for the grant of letters was to fix the person who was to execute the power granted by the will; and that having been done by the proper court of the testator's domicile, it was unnecessary to obtain letters in this state, for they could have been useful only for the purpose of fixing the persons to execute the power.

"In principle, the case is not distinguishable from that of a devise of a power to individuals, not executors, to sell lands lying in a different state from that of the testator's domicile, in which the will was admitted to probate; for, after the character of the executor has been once established, the person to whom the power is granted is fixed; and it is only necessary, in executing the power in another state, or in showing that the previous exercise of it is effectual there, to admit to probate, in the state, the will giving the power, and to show that the party exercising it is clothed with the character designated in it. The principles stated in the cases of *Lewis and wife v. McFarland, McCormick v. Sullivant,* and *Carmichal v. Elmendorf,* sustain this view."

Whether the will of Wade H. Bolton was proved in the Tennessee court, so as to be a valid will of lands in this state, under our statutes, as amended by the code, we do not find it material to decide in this case.   See Gantt's Dig., secs. 5800, 5801-2, from the revised statutes, and sec. 5784, taken from the code.

The allegations of the cross-bill of Apperson, that the administration of Seth W. Bolton on the estate of Wade H. Bolton, in Desha county, Arkansas, was fraudulent, and that the debt probated against the estate was simulated, etc., etc., were denied by the answer of Seth W. Bolton, and were not proven on the hearing.

The Arkansas lands were assets in the hands of the administrator, for the payment of any debts of our citizens properly

probated against the estate (see Gantt's Dig., secs. 68, 167), and the Tennessee executor could not deprive the administrator of possession of the lands for that purpose, by advertising and selling them under the power contained in the will, until the Arkansas debts, expenses of administration, etc., were paid. *Clark as Adm'r v. Holt*, 16 Ark., 265. It was also proper, perhaps, for the court below to enjoin the sale of the lands while they were in litigation.

The degree on this branch of the case must be affirmed, but this will not prevent Apperson from applying to the court below, at the proper time, to remove the injunction against his selling the lands.

III. As to the dower of Lavinia A. Bolton. On the 31st of October, 1870, on motion of her solicitor, she was made a defendant to the original suit for partition, and leave granted her to file her answer and cross-bill within sixty days. Her answer, which was made a cross-bill, was filed on the 9th of December, 1870; in which she alleged that she was the widow of Wade H. Bolton, deceased. That he died seized of an undivided half of the lands described in the original bill, and without children, or other descendants in being capable of inheriting. That she, as his widow, was entitled to one-half of his personal and real estate, absolutely, and prayed that dower be assigned her accordingly. She makes no allusion to the will of her deceased husband. None of the parties seem to have answered her cross-bill. On the final hearing, she was decreed an absolute estate in one-half of the share of the lands partitioned to Wade H. Bolton. Her counsel here states that she was decreed an absolute, instead of a life estate, in the lands, under the published chapters of an incomplete digest, (sec. 5, p. 79), which was then supposed to be law, but which this court has since decided not to have been in force.

And her counsel concedes that under the law then in force,

(sec. 22, ch. 60, Gould's Dig., p. 454), she was only entitled to a life estate; but insists that if this error can be corrected at all in this court, it should be done by a modification of the decree, and not by reversal.   *Brown v. Collins, Adm'r,* 14 Ark., 421.

By his will, Wade H. Bolton gave to his "beloved wife Lavinia Ann," a life dower in three hundred acres of his household Hoboken plantation, in Shelby county, and a fee simple title (as he expresses it) in all his personal estate in Tennessee, except his gold watch, money, bonds, bank stock, and stock of every description.   He also bequeathed to her ten thousand dollars in money, in fee simple title forever, in addition to his life policy of ten thousand dollars, insured in the Carolina Life Insurance Company at Memphis, for her use and benefit, provided that she did not dissent from his will, and involve his estate in unnecessary litigation.

Her counsel, in their brief, state that, "unlike Mrs. Sigler, she did not wait until she had spent the provision so made for her in lieu of dower, or forfeited it by a subsequent marriage, but she promptly filed her renunciation, and took steps to recover her dower within one year from the death of her husband, as prescribed by our statute."

This may be all true, but there is no evidence of it in the record before us.   The date of Wade H. Bolton's death does not appear, but it seems, as above shown, that his will was probated and recorded on the 9th of August, 1869, and the presumption is that he was then dead.   Her cross-bill, in which she claimed dower, was filed on the 9th of December, 1870, more than a year after the probate of his will, and in it, as we have stated, no reference was made to his will, nor was the time of his death stated.   Nor does it appear that she had, in any mode, renounced the provisions made for her in the will, before her cross-bill was filed.

The decree of the court below in her favor must be reversed, but inasmuch as her cross-bill was filed under a misapprehension of the dower law, and was not answered, this branch of the case will be remanded, with directions to the court to permit her to amend her cross-bill, if she thinks proper to do so, with leave to other parties interested in the estate of Wade H. Bolton, to plead thereto, etc.