WILLIAM TUDOR *v.* GEORGE TUDOR.

May Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed August 10, 1907.

*Deeds—Fraudulent Conveyances—V. S. 4965—Wills—Effect of Probate—Relation Back to Testator's Death—Executors Authorized by Will to Sell Real Estate—Scope and Nature of Such Power.*

Though no title can be founded on a deed that is absolutely void, a deed that is voidable only may convey a perfect title.

The words "null and void," in V. S. 4965, providing that fraudulent and deceitful conveyances made to avoid a right, debt, or duty of another person shall, as against him, his heirs, executors, administrators, and assigns be "null and void," are construed to mean *voidable* only; and, therefore, such conveyances vest the legal title in the grantee, subject only to be divested by the creditors of the grantor, if they chose to impeach it.

Though a conveyance was, as between the parties, within V. S. 4965 providing that all fraudulent conveyances shall be "null and void," the fraudulent grantee having conveyed the property to a third person, who was not made a party to a suit in chancery by the vendor's creditors to subject the land to their claims, he was not bound by a decree in favor of the orators.

Where a will authorized and empowered the executors thereof to sell the real estate of which the testator should die seized, such executors, upon the probate of the will, became donees of a common law power, independent of their functions as executors, by which they could vest the title to such real estate in a purchaser; and the source of that power is not the probate court, but the testator who created the power.

A conveyance of land in this State by such executors under a foreign will, before probate here, is a defective execution of the power; but a subsequent probate here relates back and cures the defect.

Trespass for cutting timber. Plea, the general issue. Trial by court at the September Term, 1903, Windham County, *Start, J.,* presiding. Judgment, *pro forma,* for the defendant. The plaintiff excepted only to the judgment. The opinion fully states the case.

*Batchelder & Bates* for the plaintiff.

The power of the executors to sell was devised to them independently of their functions as executors, and a purchaser may deal with them as he would with any other vendor. *In Re Pearson,* 98 Cal. 603; *Hartwell* v. *Foster,* 102 Ga. 38.

*Clarke C. Fitts* for the defendant.

By the terms of the statute, Underwood got no title as against Eaton, and having no title, could convey none to Smith. The principle of equity which qualifies the absolute nullity of such fraudulent conveyance is that innocent parties ought not to suffer. But it being at law absolutely null and void, the burden is upon him who in equity claims to be an innocent purchaser for value. *Campbell* v. *Whitson,* 18 Am. Rep. 553; *Young* v. *Lathrop,* 12 Am. Rep. 603; *Tanbury* v. *Robinson,* 82 Am. Dec. 244, and notes; *Williams* v. *Merle,* 25 Am. Dec. 605, n.; 20 Cyc. 648; *Foster* v. *Foster et al.,* 56 Vt. 540.

The will was duly "published and allowed" in Vermont, but it does not appear that the executors ever qualified in this State. The will gave the executors only a power of sale, not an interest in the land. Croswell, Executors & Admrs., §330; *Brown* v. *Edson,* 23 Vt. 435; *Ferre* v. *Society,* 53 Vt. 162.

WATSON, J. The action is trespass *quare clausum fregit* for cutting timber on Lot No. 1, in the 9th range of lands in the town of Stratton.

Both parties claim title from Richard Perry, who conveyed the lot to Henry Z. Payne, March 1, 1865, by deed recorded. Payne conveyed to William W. Underwood by warranty deed dated July 21, 1866, and recorded. Underwood conveyed to Lucius Smith by warranty deed dated May 15, 1867, and recorded the 8th day of January following. Smith

conveyed to Samuel Bassett and Lot Bassett by warranty deed dated March 20, 1873, recorded July 9, of the same year.

At the September term in 1870, of Windham County Court, a judgment was recovered by certain creditors against Payne, for twenty-five hundred dollars damages and costs. Execution was issued thereon, and levy, was made November 17, 1870, on the land in question; due proceedings were thereupon had and the land set off to the execution creditors.

These creditors brought their bill to clear the title, under the levy, from the cloud of the fraudulent conveyance, to the court of chancery in that county at the September term of 1872, against Payne and Underwood, containing allegations showing the above mentioned conveyance from Payne to Underwood to have been fraudulent as to said creditors, and that the grantee participated in the fraud; also showing the judgment, execution, levy upon the land, and set off, as above stated; praying that Underwood be compelled to convey said land to the orators and be perpetually enjoined from conveying the same to any one else, and from asserting any right or title thereto. At that term of court the bill was taken as confessed against Payne, and at the following term, in April, 1873, upon hearing against Underwood, he having appeared and made answer, a decree was rendered against him in accordance with the prayer of the bill.

It is under the set off on the execution, and this decree in chancery, that the defendant claims title.

The deed from Underwood to Lucius Smith purports to have been for a valuable consideration, and included other lands. Smith was not made a party to the suit in chancery, and there is no finding as to whether, when he took his deed, he did or did not have notice that the conveyance to his grantor was in fraud of the rights of creditors.

The statute then in force, as now, provides that 'all fraudulent and deceitful conveyances of lands, etc., made or had to avoid any right, debt, or duty of any other person, shall, as against the party or parties only whose right, debt, or duty is attempted to be avoided, their heirs, executors, administrators, or assigns, be null and void. It is argued that by the terms of the statute Underwood had no title as against the execution creditors, and having no title could convey none to Smith; also that since the statute declares a conveyance in fraud of the

rights of creditors null and void, it is incumbent upon a party claiming to be an innocent purchaser for value to establish it.

True it is this statute uses the words "null and void," yet in construction they are given the sense of voidable merely. Such conveyances are good as between the parties, also as against the grantor. *Carpenter* v. *McClure,* 39 Vt. 9. In stating the distinction between a thing void and one voidable, Bacon says: "A thing is void which was done against law at the very time of the doing it, and no person is bound by such act; but a thing is only voidable which is done by a person who ought not to have done it, but who nevertheless cannot avoid it himself after it is done." Again, "of a void act or deed every stranger may take advantage, but not of a voidable one." Bac. Abr. Tit. Void and Voidable.

In *Anderson* v. *Roberts,* 18 Johns. 515, the construction of the statute of New York, a transcript, substantially, from the 13th of Eliz. ch. 5, in which such fraudulent conveyances are declared to be "utterly void," was under consideration. Recognizing the above passage from Bacon as showing the true distinction, it is said that whenever the act done takes effect as to some purposes, and is void as to persons who have an interest in impeaching it, the act is not a nullity, and therefore in a legal sense, not utterly void, but merely voidable. It was held that the fraudulent grantee takes the entire interest of the fraudulent grantor, and that the deed is voidable at the instance of the creditor, not legally and strictly void. The same question has been considered at length by the court of last resort in Maine, and the same conclusion reached. *Andrews* v. *Marshall,* 43 Me. 272. To the same effect are the decisions in Massachusetts. *Harvey* v. *Varney,* 98 Mass. 120; *Freeland* v. *Freeland,* 102 Mass. 477.

The State of Wisconsin has a statute to the effect that a money judgment, when docketed as provided by law, shall, for a period of ten years from the date of the rendition thereof, be a lien on the real property of the judgment debtor, except his homestead, in the county where the same is docketed. In *French Lumbering Co.* v. *Theriault,* 107 Wis. 627, 81 Am. St. Rep. 856, one question was whether any lien was created by a judgment, properly docketed in the county where real estate is located which the judgment debtor previously owned but before such docketing conveyed to another, if the conveyance

was void under the provisions of the statute of that state, whereby every conveyance or assignment of any estate or interest in lands made with intent to hinder, delay, or defraud creditors, etc., "shall be void." It was contended that the word "void" as there used meant "absolutely void"; that as regarded the judgment creditor the title to the property attempted to be conveyed remained unaffected by the attempt; and that accordingly the judgment attached to and became a lien thereon. It was held that the term "void" in the statute means "voidable" only, and that a judgment against a fraudulent vendor of real property, docketed as specified by law, does not of itself create a lien on such property, because the conveyance vests in the fraudulent vendee the title of his vendor subject to the right of the defrauded creditors at their election to avoid it.

By a statute in this State passed in 1843, general assignments by debtors for the benefit of creditors, "shall be null and void" as against creditors. Yet it was held that by the term "void" nothing more was intended than inoperative, or voidable. *Merrill* v. *Englesby*, 28 Vt. 150.

It follows that the conveyance from Payne to Underwood was not void but only voidable, and that thereby the legal title vested in the latter, subject to be devested by creditors of the grantor if they saw fit to call it in question. Its validity was not assailed by them until after the fraudulent grantee had conveyed the property to Smith who was not made a party to the execution creditors' suit in chancery and hence whether chargeable with notice of the fraud or not, he was not affected by the decree. Smith's title passed to his grantees, and the plaintiff here may stand upon it. It is a principle of law that nothing can be founded upon a deed absolutely void, yet from those voidable only perfect rights or titles may flow. *Somes* v. *Brewer*, 2 Pick. 184; *Crocker* v. *Bellangee*, 6 Wis. 645, 70 Am. Dec. 489.

Lot Bassett, one of the grantees in the plaintiff's chain of title, died prior to 1889, testate. At the time of his death he was a resident of the State of Massachusetts. Prior to the 23rd day of July, 1889, his will was duly probated in that State. Elisha Bassett, Wm. O. Bassett, and John N. Bassett were named as executors in the will, and they were authorized by the will to sell all of the real estate of the deceased wherever situated. The executors qualified in Massachusetts before the

day last named. On that day they, by their deed properly
executed, conveyed the property here in question, of which the
testator died seized, to the plaintiff and one George S. Town.
Two months later the deed was recorded. In March, 1897, the
will was duly published and allowed as the last will and testa-
ment of Lot Bassett in the probate court for the District of
Marlboro in this State, the district in which the land in dispute
is situated; but it does not appear that the executors named
therein were qualified in this State. The defendant contends
that since the will gave the executors only a naked power of
sale, it was essential to the exercise of the power upon realty
in this State that they qualify here.

Under the devise to sell, the executors had a common law
authority by which they could vest the legal estate in a pur-
chaser, and the purchasers under that power took the estate
from the testator by whom the power was created,—not from
the power itself,—in the same manner as if the power and the
instrument executing the power, had been incorporated in one
instrument. Co. Litt. 113a; 4 Kent's Com. 337; *Duke of Marl-
borough* v. *Godolphin*, 2 Vesey, Sen. 61, 21 Eng. Rul. Cas. 397;
*Cook* v. *Duckenfield*, 2 Atk. 562; *Doe d. Wigan* v. *Jones*, 10
B. & C. 459; *Bradish* v. *Gibbs*, 3 Johns. Ch. 523; *Conklin* v.
*Egerton's Admr.*, 21 Wend. 430; *Pratt* v. *Rice*, 7 Cush. 209.
This same principle is recognized in *Ferre* v. *American Board
of Comrs.*, 53 Vt. 162.

The fact that the land in controversy is situated in another
state than that of the primary jurisdiction makes no difference
in this respect, since by admitting the foreign will to probate
in this State it had the same effect as if originally proved and
allowed by the same court. Questions involving local creditors
or the expenses of ancillary administration do not arise. When
the will was allowed, filed and recorded in the probate court
in the district in which the real estate is situated, it was suffi-
cient to operate upon the property (V. S. 2365-2369), notwith-
standing letters testamentary had been granted only in the
primary jurisdiction. The source of the executors' authority
under the power was the same,—not from the probate court,
but from the owner of the estate who created the power.

In *Newton* v. *Bronson*, 13 N. Y. 587, the action was brought
against the defendant as executor of a will to compel specific

15

performance of a contract alleged to have been made by him as such executor, through his attorneys, for the sale and conveyance of lands situate in the State of Illinois. The testator died in the city of New York, owning the land in question, and his will was duly proved before the surrogate of the city and county of New York. The defendant and one other were named in the will as executors but the defendant alone qualified and assumed to act. The testator by his will authorized and empowered the executors named therein, or such of them as should qualify and assume its execution, to contract for the sale of, and to grant, bargain, sell, and convey, etc., all or any part of the real estate whereof he should die seized. It was argued that the defendant's office of executor did not extend to the lands in Illinois, upon the principle that letters testamentary and of administration have no force beyond the jurisdiction in which they are granted, hence that he could not effectually perform the judgment of the court, not being able, as was insisted, to affect the title to land outside the state of the principal administration. It was held that he was the donee of a power at common law and under the statute; that although it was, by the will, made a condition to his acting under the power that he should qualify as executor, when he had performed that condition, he acted in conveying the land as the devisee of a power created by the owner of the estate, and not under an authority conferred by the surrogate; and that the plaintiff was entitled to specific performance of the contract.

In *Crusoe* v. *Butler*, 36 Miss. 150, the testator was a resident of the State of Alabama and died there, having at the time of his death title to land in the State of Mississippi, which was the land in controversy. The will was probated in the state of the domicile and the executor named in the will there qualified. Later, but not until after the conveyance of the land by the executor, an authenticated copy of the probate of the will in the primary jurisdiction was admitted to probate and recorded in the proper court in the county and state where the land was situated. The will devised to the executors therein named or the survivor of them full power and authority, whenever they thought expedient, to bargain, sell, and convey all and any of the testator's real estate, wherever the same might be situate, for the purposes specified.

One material question before the court was, whether it was necessary that letters testamentary should be granted to the executor in the state of the situs of the land upon admitting the will to record there. It was insisted that as no such letters were granted there, the executor was never invested with the authority to exercise the power to convey the lands conferred upon him by the will, hence that his deed was void. It was held that the will granted a power not appertaining to the subject-matter of administration—a trust committed by the testator to the persons who should become his executors. That in such a case the executor derives his authority from the will, and not from letters testamentary; that while it was true that his character and capacity as executor must be established by proof of the will yet when the will was probated there, and it was shown that he had taken upon himself the office of executor, the power to sell the land, which was independent of his appropriate functions as executor, became vested; that the only necessity for the grant of letters was to fix the person who was to execute the power granted by the will; and since that had been done by the proper court of the testator's domicile, it was unnecessary to obtain letters in the state where the land was situated. The same doctrine was laid down in *Apperson's Exr.* v. *Bolton,* 29 Ark. 418, and in *Babcock* v. *Collins,* 60 Minn. 73, 51 Am. St. Rep. 503.

Our statute provides that no will shall pass either real or personal estate, unless it is proved and allowed in the probate court, or by appeal in the county or Supreme Court. V. S. 2356. In the case before us, as before seen, the conveyance of the land by the executors was before the probate of the will in this State. This was a defective execution of the power, but as the estate passed by force of the will, the subsequent probate here related back and gave effect to the prior conveyance. *Ex parte Fuller,* 2 Story 327; *Crusoe* v. *Butler,* 36 Miss. 150; *Babcock* v. *Collins,* above cited.

The plaintiff therefore has a good title to the land in dispute, and upon the facts found he is entitled to recover.

*Pro forma judgment reversed, and judgment for the plaintiff to recover the sum of one hundred fifty dollars damages with interest since September, 1903, and costs.*